361 So.2d 324 (1978)
ARROW FOOD DISTRIBUTORS, INC.
v.
Lloyd F. LOVE, Conservator of the Estate of William F. Riley, Jr.
No. 50287.
Supreme Court of Mississippi.
July 12, 1978.
Rehearing Denied August 23, 1978.
*325 Upshaw, Dorizas & Ladner, Heber Ladner, Jr., Jackson, for appellant.
Daniel, Coker, Horton, Bell & Dukes, Terry R. Levy, Joe H. Daniel, Jackson, Zuccaro, Riley, Pintard & Brown, William F. Riley, Sr., Natchez, for appellee.
Before ROBERTSON, SUGG and BROOM, JJ.
ROBERTSON, Presiding Justice, for the Court:
Arrow Food Distributors, Inc., a Delaware corporation with its headquarters in New Orleans, Louisiana, appeals from a decree of the Chancery Court of Adams County, Mississippi, for $248,920, in favor of Lloyd F. Love, Conservator of the Estate of William F. Riley, Jr.
The injuries to Riley resulted from a head-on collision of Riley's Pinto automobile with a large refrigerated tractor-trailer unit owned by Arrow and driven by Henry D. Alexander. About 4:45 A.M., August 1, 1975, William F. Riley, Jr. was driving south on U.S. Highway 61 north of Baton Rouge, Louisiana. Riley was on his way back to work as a roustabout on an oil rig off of the Louisiana coast. It was raining rather heavily and foggy in low places along the highway. Henry Alexander was driving Arrow's refrigerated tractor-trailer unit north on U.S. Highway 61 at a speed of 45 to 50 miles per hour. He was en route to Natchez, Mississippi, to deliver refrigerated foods ordered by Mississippi customers of Arrow. Alexander testified that he thought he saw headlights in his lane. He blinked his lights and, according to Alexander, the headlights, instead of moving west, moved to the east side of the highway. Alexander continued:
"At this time I applied my brakes lightly, my truck went into a skid, and shortly after I went into a skid there was an impact.
Q All right. Now, as you approached that vehicle, tell the Court and Jury again what that vehicle did?
A It moved to the right shoulder.
Q What did you do at that time?
A At that time I looked and I saw that the left lane was available, there was no traffic coming, so I tried to move over to my left.
Q What were the weather conditions that day?
A It was raining.
Q Were there any other weather conditions that you took note of?
A It was slightly foggy in spots."
Louisiana Highway Patrolman Joe White testified that the refrigerated van turned over and the dual rear wheels came to rest on top of the Pinto automobile. Riley's Pinto was completely in the southbound lane. Arrow's truck was partially in the southbound lane, partially on the west shoulder and partially in the northbound lane. Riley remained unconscious in a Baton Rouge hospital for 24 hours. He suffered a brain contusion, basilar skull fracture, sheared teeth, various bruises and cuts on the head requiring 175 stitches, burns to his fingers and hand, and a compression fracture of the sixth cervical vertebra with a narrowing of the disc between the fifth and sixth vertebrae. The force of the impact bent the frame of the defendant's truck and totally demolished Riley's automobile.
Arrow assigned 24 errors but briefed only 6. In its brief, Arrow argues:
1. The Chancery Court of Adams County did not have jurisdiction;
2. The United States District Court for the Southern District of Mississippi did have jurisdiction even though, after a hearing, that Court had remanded the case to the Adams County Chancery Court;
3. The trial court erred in sustaining a motion in limine and entering a protective order covering Riley's medical records at Whitfield;
4. The court erred when it excluded the testimony of an expert "accidentologist"; and

*326 5. The verdict was against the overwhelming weight of the evidence.
Nelson DeSoto, vice president of appellant, testified that Arrow had sold foodstuffs in Mississippi continuously since 1951. Sales in Mississippi averaged $2,000 to $3,000 a week. A salesman would come to Mississippi and solicit orders. The orders would be filled in Louisiana and shipped by truck to Mississippi purchasers. Sales in Mississippi of $104,000 to $156,000 annually, in our opinion, constitute a substantial amount of business. In April, 1976, $9,000 was owed Arrow by Mississippi purchasers. On June 23, 1976, approximately $3,500 was still owed Arrow by Mississippi purchasers, and two delinquent accounts had been placed in the hands of attorneys for collection. Arrow had used Mississippi's highways for 15 years in delivering foodstuffs sold to Mississippi customers, and now would use Mississippi's courts in collecting debts due it.
Suit was begun as an attachment in chancery. The defendants were Arrow Foods, a non-resident corporation, and four Mississippi debtors of Arrow. Process was served on the Secretary of State of Mississippi for Arrow. All four attachment defendants answered admitting that they owed Arrow. Appellant moved to transfer to the United States District Court for the Southern District of Mississippi on the ground of diversity of citizenship between Arrow and the ward, William F. Riley, Jr., who was a Natchez resident, even though his conservator, Lloyd F. Love, was a Louisiana resident. After a hearing, the United States District Court remanded the case to the Chancery Court of Adams County. The pleadings transferred to the chancery court included Arrow's Answer which asserted thirteen defenses.
Mississippi Code Annotated section 13-3-57 (1972) provides in part:
"Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee.
.....
"The doing of such business, or the engaging in any such work or service in this state, or the making of such contract, or the committing of such tort in this state, shall be deemed to be a signification of such nonresident's agreement that any process against it or its representative which is so served upon the secretary of state shall be of the same legal force and effect as if served on the nonresident at its principal place of business in the state or country where it is incorporated and according to the law of that state or country." (Emphasis added).
Arrow contends that section 13-3-57 does not apply because the collision took place in Louisiana and the cause of action accrued there. The appellee answers that not only does section 13-3-57 apply but that Mississippi Code Annotated section 79-1-27 (1972) also applies. The appellee contends that section 79-1-27 complements 13-3-57 and that these sections must be read together and harmonized. Section 79-1-27 provides:
"Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, found doing business in this state, *327 shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not." (Emphasis added).
In Vicksburg S. & P.R. Co. v. Forcheimer, 113 Miss. 531, 74 So. 418 (1917), in discussing section 79-1-27 (Chapter 123, Laws 1908), this Court said:
"The policy of our state is to open the door of our courts to all foreign corporations desiring to sue on any proper cause of action, and to subject foreign corporations to suit here the same as individuals. This is the express declaration of our statute, ...." 113 Miss. at 537-38, 74 So. at 419.
In our opinion section 13-3-57 and 79-1-27 must be read together, construed together and harmonized one with the other. When this is done and full meaning is given to the language used in each section, it is clear to us that 13-3-57 complements 79-1-27 in furthering the state's avowed policy as expressed in Vicksburg S. & P.R. Co. v. Forcheimer, supra, to "open the door" of our Mississippi courts to foreign corporations found doing business in this State to sue and be sued here on all bona fide causes of action.
Besides being a bona fide attachment suit, the chancellor found that Arrow over the years had done and was still doing a substantial amount of business in Mississippi at the time this cause of action accrued. We cannot say that the chancellor was wrong in his finding.
We note that Arrow filed an Answer and asserted thirteen defenses in a full trial of this cause. By entering a general appearance, Arrow waived any asserted defect in the jurisdiction. Maupin v. Dennis, 252 Miss. 496, 175 So.2d 130 (1965); Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964).
In McMillan v. Tate, 260 So.2d 832 (Miss. 1972) this Court said:
"While an individual or corporation may appear specially for the purpose of objecting to the jurisdiction of the court over his person, he must do so before filing any other pleadings." 260 So.2d at 833. (Emphasis added).
There is no merit in this assignment of error.
In its next assignment of error, Arrow attempts to relitigate the matter of federal court jurisdiction in a State court. This contention was long ago rejected by the Supreme Court of the United States in Missouri R.R. Co. v. Fitzgerald, 160 U.S. 556, 16 S.Ct. 389, 40 L.Ed. 536 (1896). In McLaughlin Bros. v. Hallowell, 228 U.S. 278, 33 S.Ct. 465, 57 L.Ed. 835 (1912), the United States Supreme Court again answered this contention:
"The supreme court of Nebraska rightly recognized the courts of the United States to be the exclusive judges of their own jurisdiction, ... As, under the statute, a remanding order of the circuit court is not reviewable by this court on appeal or writ of error from or to that court, so it would seem to follow that it cannot be reviewed on a writ of error to a state court, the prohibition being that `no appeal or writ of error from the decision of the circuit court, remanding such cause, shall be allowed.'" 227 U.S. at 286, 33 S.Ct. at 468, 57 L.Ed. at 839.
In Rath Packing Co. v. Becker, 530 F.2d 1295 (9th Cir.1975) cert. granted 425 U.S. 933, 96 S.Ct. 1663, 48 L.Ed.2d 174 (1976), the Ninth Circuit, citing Missouri R.R. Co. v. Fitzgerald, supra, said:
"The decision of the district court that the case does not invoke the federal jurisdiction and must be remanded precludes further litigation of the issue of the forum in which the removed case is to be litigated." 530 F.2d at 1303. (Emphasis added).
Appellant next contends that the verdict is against the overwhelming weight of the evidence.
Where the accident happened, Highway 61 is about 50 feet wide. There are two travel lanes, each approximately 12 feet wide, and beside each lane is an asphalt shoulder ten or twelve feet wide. Henry D. Alexander, the driver of appellant's tractor-trailer, *328 was the only eyewitness able to testify. He testified that when he thought he saw Riley in his northbound lane he blinked his lights but Riley moved further to the east. Then Alexander braked lightly and attempted to move into Riley's southbound lane, but his truck "went into a skid and shortly after I went into a skid there was an impact."
The impact was entirely in Riley's southbound lane. When Trooper White arrived he found Riley's Pinto underneath the right rear dual wheels of the trailer which had turned over. Arrow's tractor-trailer stretched all the way from the west shoulder completely across the southbound lane and partially across the northbound lane. There were two-inch-deep gouge marks two feet west of the center line which stretched north in the southbound lane for 40 feet to the point of impact. The physical facts fully support and justify the jury's verdict as to liability.
As to the jury verdict for $248,920 damages, the overwhelming testimony of the medical doctors who examined him was that 23-year-old Billy Riley was totally and permanently disabled. After carefully examining the photographs in the record showing the complete demolition of Riley's Pinto it is hard to comprehend how Riley is even alive today.
He suffered a brain contusion, basilar skull fracture, sheared teeth and cuts on the head requiring 175 stitches. The doctors attributed his complete change of personality (causing him to threaten to kill his wife and child, his parents and even himself) to dead brain cells and the formation of scar tissue as a result of the brain contusion and basilar skull fracture.
Riley was making $10,800 a year with a good chance of advancement. Under the facts of this case, we cannot say that the unanimous jury verdict is excessive and that the chancellor was in error in adopting the jury verdict as the judgment of the court.
Even if the records on Riley at the Mississippi State Hospital at Whitfield were not privileged and were admissible in evidence, Arrow has not preserved this point because these records were never introduced into evidence, nor were they even offered into evidence. They are not, therefore, before this Court. We stated in Willenbrock v. Brown, 239 So.2d 922 (Miss. 1970):
"It was the duty of the appellant to perfect the record on appeal and we have stated many times that we will not consider anything on appeal that does not appear in the record." 239 So.2d at 925.
There is no merit in the appellant's contention that the chancellor erred when he excluded the opinion testimony of accidentologist Alvin Doyle, Jr.
We specifically answered this contention in Hagan Storm Fence Company v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963), when we said:
"It should be observed that Mr. Doyle had no facts before him on which to reach his conclusions that the jury did not have. He testified from photographs that had been introduced in evidence, the location at which the two vehicles came to rest as necessarily related to him by witnesses, and testified as to the indicated speed of each automobile at the time of the accident, and of course he did not know the point of impact except from hearsay, and on the basis of his experience as hereinbefore set forth." 245 Miss. at 492, 148 So.2d at 695.
His observations as to how the jury should interpret the pictures introduced into evidence invaded the province of the jury and should not have been admitted.
Finding no reversible error, we are of the opinion that the decree of the chancery court, adopting the jury's verdict as its own, should be and is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.