Lawrence WASHINGTON,
Plaintiff-Appellant,

v.

NORTON MANUFACTURING, INC.,
Defendant-Appellee,

ABC Corporation, Defendant.

No. 78–2404
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1979.

Rehearing Denied Feb. 21, 1979.

* Rule 18, 5 Cir; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Louis R. Koerner, Jr., Terry A. Bell, New Orleans, La., for plaintiff-appellant.

Daniel, Coker, Horton, Bell & Dukes, Forrest W. Stringfellow, Gulfport, Miss., for defendant-appellee.

Before BROWN, Chief Judge, and COLEMAN and VANCE, Circuit Judges.

COLEMAN, Circuit Judge.

This case involves (1) the validity of a service of process upon the defendant corporation's sole resident Mississippi employee and (2) whether the District Court had jurisdiction over the defendant on the ground that the corporation was "doing business" within the State of Mississippi.

The facts of the case, insofar as they are relevant to the issues presented, may be briefly recited. Plaintiff Washington is a Louisiana resident and citizen. He worked for some five years for Avondale Shipyards, Inc. as the operator of a grinding or sanding machine, which was equipped with grinding stones or wheels assertedly manufactured by the defendant. Apparently as a result of constant inhalation of dust particles at work, Washington became permanently disabled. Basing his suit upon diversity of citizenship,[1] he sued Norton Compa-

---

1. The complaint also asserted that subject matter jurisdiction was based upon 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (commerce and antitrust laws), and 33 U.S.C. § 933 (Longshoremen's and Harbor Workers Act). The complaint does not describe how the case arises under any of these statutes, how-

ever, and we think it clear that these allegations of subject matter jurisdiction are without merit. This suit seeks damages under Mississippi law for alleged negligence, and subject matter jurisdiction can exist for a federal court only if there is diversity of citizenship.

ny (Norton)[2] in the Southern District of Mississippi to recover damages allegedly caused by the defendant's negligence.

■ In February 1978, after the Court had quashed two earlier attempts to serve process, and some seventeen months after the plaintiff filed suit, Washington learned that Norton had a sales representative residing in Mississippi. He then attempted to serve process on that representative, Donald W. Churchill. Washington then gave notice to take the deposition of Churchill. He also filed interrogatories to discover facts relevant to the issue of the Court's jurisdiction over Norton. Norton promptly moved for a protective order on the grounds that deposing Churchill would unduly prejudice and burden the company. At an expedited hearing, the District Judge quashed the service of process on Norton, through Churchill, but it granted Washington an additional thirty days to again attempt service of process in a lawful manner, provided $500 was paid to defendant's counsel as a sanction. The order further directed that the complaint would be dismissed if the sanctions were not paid. Washington did not pay the sanctions, and he appealed before the expiration of the thirty days.[3]

■ Washington's principal complaint on appeal is that the District Judge abused his discretion by not allowing adequate discovery on the threshold issue of *in personam* jurisdiction. It is clear that, in a proper case, the District Judge has broad discretion to allow discovery on jurisdictional issues, *see* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2009 (1970); and the judge may determine these issues by receiv-

ing affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.

In this case, the trial judge determined that the issue of *in personam* jurisdiction over Norton could be decided upon affidavits and an oral hearing. Those affidavits revealed the following facts. Churchill, a sales representative, is the sole employee of Norton residing in Mississippi. Churchill moved to Mississippi on October 1, 1976. Prior to that time Norton had no employees in the state. The Norton Company has no separate offices in the state, and Churchill operates from an office in his own home. He is neither a managing agent nor a corporate officer, and Norton has not authorized him to make any charges to the company. He is not authorized to negotiate contracts, and he has not been appointed as an agent to receive service of process. There are no exclusive distributors for Norton products in Mississippi, but there are some distributors who handle Norton products as well as other lines. Churchill does not write orders for Norton, but the other distributors normally place orders with the company at locations in Massachusetts and North Carolina. Norton does not manufacture any grinding wheels in Mississippi, nor has it ever in the past. The company has no place of business in the state, nor does it have a company telephone number or bank account. It keeps no corporate records in the state, owns no property in the state, and has never paid any taxes to the state.

■ Service of process is a mechanism for bringing notice of the commencement of

2. The complaint named Norton Manufacturing, Inc. and ABC Corporation as defendants. The litigant now before us is Norton Company, and in view of our disposition of this case we need not decide what effect, if any, this misnomer of parties should have on the outcome. The parties have not enlightened us as to the identity of ABC Corporation, and our best guess is that there is no such corporation and that the inclusion of ABC Corporation as a defendant is a typographical error.

3. Initially we were concerned that the District Court's order might not be final within the

meaning of 28 U.S.C. § 1291 because no judgment was ever entered. However, upon examination of the wording of the order, it is clear to us that the order was final and therefore appealable. The order stated that if the sanctions were not paid, the complaint would be dismissed. If Washington did not intend to pay the sanctions, it seems unnecessary for him to wait for the expiration of the thirty days before he could appeal. Therefore, we treat this appeal as one from an order dismissing the complaint.

an action to defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit. In the federal courts, the standards governing the validity of service of process are contained in Rule 4 of the Federal Rules of Civil Procedure. In this case, service could have been accomplished in accordance with Rule 4(d)(3)[4] or 4(d)(7).[5] Therefore, if Washington served process upon "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," Fed.R. Civ.P. 4(d)(3), that service of process would have been sufficient to give Norton notice of the initiation of the litigation. Federal, not state, standards define who such agents are; *see* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1103; *cf. National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (use of federal standard to determine whether agent had been appointed to receive service of process under Rule 4(d)(1)); but it should be noted that a valid service of process does not necessarily confer *in personam* jurisdiction over a defendant in a federal district court. In a diversity case, the federal court is bound by state law concerning the amenability of a person or a corporation to suit, so long as state law does not exceed the limitations imposed by the Due Process Clause of the Fourteenth Amendment. *See, e. g., Wilkerson v. Fortuna Corp.*, 5 Cir. 1977, 554 F.2d 745; *Walker v. Savell*, 5 Cir. 1964, 335 F.2d 536; 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075 (1969). States are not required to assert jurisdiction to the extent permitted by the Due Process Clause if they do not choose to do so, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), and Mississippi has not chosen to extend its jurisdiction to the limits permitted by the Constitution.

■ Washington's initial effort to obtain jurisdiction over Norton failed because the Mississippi "long arm" statute[6] cannot be

---

**4.** Service shall be made as follows:

Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.
Fed.R.Civ.P. 4(d)(3).

**5.** Service shall be made was follows:

Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.
Fed.R.Civ.P. 4(d)(7).

**6.** Miss.Code Ann. § 13–3–57 (Supp.1978) provides, in relevant part:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee.

\* \* \* \* \* \*

The doing of such business, or the engaging in any such work or service in this state, or the making of such contract, or the committing of such tort in this state, shall be deemed to be a signification of such nonresident's agreement that any process against it or its representative which is so served upon the secretary of state shall be of the same legal force and effect as if served on the nonresident at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.

invoked by a non-resident plaintiff to establish jurisdiction over a corporation which is merely "doing business" within Mississippi. We have recently considered this statute at length and have upheld it against constitutional attack. *Breeland v. Hide-A-Way Lake, Inc.*, 5 Cir., 585 F.2d 716 (1978). After his first effort to serve process failed, Washington tried to serve process on a Norton employee in Louisiana. The trial judge properly found no federal or state authority for such a procedure and correctly quashed that service of process. Finally, Washington served process on Churchill, who was Norton's only employee then resident in the State of Mississippi, asserting that Norton is amenable to suit in the state courts (and hence in the federal courts because of diverse citizenship) under the Mississippi "doing business" statute, which provides:

> Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not.

Miss.Code Ann. § 79–1–27 (1972).

This statute also has a counterpart which controls the service of process in the state courts.[7] As we have seen, however, the plaintiff need follow this state procedure only if he cannot find an employee of Norton who fulfills the requirements of Rule 4(d)(3).

This case might well go off on whether Churchill was a "general agent" within the meaning of Rule 4(d)(3). Since, however, the judgment of the District Court must be affirmed for lack of jurisdiction over Norton, we need not pause to decide the "general agent" point.

■ Shortly after the Marshal's return of service, Norton appeared and contested the validity of the service of process, as well as personal jurisdiction. Specifically, Norton stated that it was not "doing business" within the state and was not subject to suit there. Norton has pressed this issue at every step of the litigation and has certainly not waived the defense of lack of jurisdiction over the person. *See* Fed.R.Civ.P. 12(h). Therefore, having passed up the validity of the service of process, we take up the issue of whether Norton was "doing business" within the state. If it was not "doing business", as that term has been defined by the Mississippi Supreme Court, the trial court properly dismissed the complaint. If there is some doubt, more discovery would have been in order. We are convinced that the issue was not in doubt and that Norton was not "doing business" within Mississippi.

In contrast to the relatively plentiful authority construing the Mississippi long arm statute,[8] there is a dearth of precedent on

---

7. Section 79–1–29 provides:
   Process may be served upon any agent of such foreign corporation found within the county where the suit is brought, no matter what character of agent such person may be; and in the absence of an agent, it shall be sufficient to serve the process upon any person, if found within the county where the suit is brought, who represented the corporation at the time of the transaction out of which the suit arises took place, or if the agency through which the transaction was had be itself a corporation, then upon any agent of that corporation upon whom process might have been served if it were the defendant. The officer serving the process shall state the facts, upon whom issued, etc., in his return, and service of process so made shall be as effectual as if a corporation of this state were sued, and the process has been served as required by law; but in order that defendant corporation may also have effectual notice, it shall be the duty of the clerk to immediately mail a copy of the process to the home office of the corporation by registered letter, the postage and fees of which shall be taxed as other costs. The clerk shall file with the papers in the cause a certificate of the fact of such mailing, and make a minute thereof upon the docket, and no judgment shall be taken in the case until thirty days after the date of such mailing.
   This statute simply prescribes the manner in which process will be served on corporations which are parties to state court proceedings. It does not purport to govern in personam jurisdiction over nonresident corporations which are "doing business" within Mississippi.

8. Miss.Code Ann. § 13–3–57 has been authoritatively construed by the State Supreme Court in a number of cases. *See Arrow Food Distrib-*

the doing business statute. It appears, however, that the Mississippi Supreme Court would construe the "doing business" provisions of two statutes, §§ 13-3-57 and 79-1-27, in the same manner. In a very recent case, the State Supreme Court upheld a chancery court ruling that it had obtained jurisdiction over a nonresident corporation under the long arm statute because the corporation was "doing business" within the state, even though the tort had been committed in Louisiana. *Arrow Food Distributors, Inc. v. Love,* 361 So.2d 324 (Miss.1978). In the course of its opinion, the Supreme Court stated:

> In our opinion section 13-3-57 and 79-1-27 must be read together, construed together and harmonized one with the other. When this is done and full meaning is given to the language used in each section, it is clear to us that 13-3-57 complements 79-1-27 in furthering the state's avowed policy as expressed in *Vicksburg, S. & P. R. Co. v. Forcheimer,* [113 Miss. 531, 74 So. 418 (1917)], to "open the door" of our Mississippi courts to foreign corporations found doing business in this State to sue and be sued here on all bona fide causes of action.

361 So.2d at 327.

■ Earlier cases did not differentiate between the "doing business" statute and the predecessor to the present long arm statute in their analysis of the phrase "do-

utors, Inc. v. Love, 361 So.2d 324 (Miss.1978) (harmonizing §§ 13-3-57 and 79-1-27); *Miller v. Glendale Equipment & Supply, Inc.,* 344 So.2d 736 (Miss.1977) (jurisdiction over party who performed contract partly in Mississippi); *Ga-Pak Lumber Co., Inc. v. Nalley,* 337 So.2d 1270 (Miss.1976) (limited partnership found not doing business within state); *Smith v. Temco, Inc.,* 252 So.2d 212 (Miss.1971) (jurisdiction over party who ommitted tort partly in state); *E. B. Kaiser Co. v. Ludlow,* 243 So.2d 62 (Miss. 1971) (corporation found doing business in state); *Collins v. Truck Equipment Sales, Inc.,* 231 So.2d 187 (Miss.1970) (corporation found not doing business in state); *Breckenridge v. Time, Inc.,* 253 Miss. 835, 179 So.2d 781 (1965) (corporation found not doing business in state); *Republic-Transcon Industries, Inc. v. Templeton,* 253 Miss. 132, 175 So.2d 185 (1965) (corporation found not doing business in state); *Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785

ing business". *See, e. g., Knower v. Baldwin,* 195 Miss. 166, 15 So.2d 47 (1943); *Lee v. Memphis Publishing Co.,* 195 Miss. 264, 14 So.2d 351 (1943). Our case of *Gillentine v. Illinois Wesleyan University,* 5 Cir. 1952, 194 F.2d 970, also construed the "doing business" statute by reference to Mississippi decisions which had interpreted the predecessor to the long arm statute. *See also Hyde Construction Co. v. Koehring Co.,* 321 F.Supp. 1193 (S.D.Miss.1969). Therefore, we believe that we are on sound ground when we interpret the phrase "doing business" of Miss.Code Ann. § 79-1-27 in the same manner as the Mississippi Supreme Court has interpreted the phrase "doing business" of Miss.Code Ann. § 13-3-57.

The case of *Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785 (1964), set forth the test for determining whether a foreign corporation was doing business within the state. The elements of the test were stated as follows:

1. The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

2. The cause of action must arise from, or be connected with, such acts or transactions; and

3. The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being

(1964) (insufficient "minimal contacts" for state to assert jurisdiction over an individual who gave a speech in state); *cf. S & A Realty Co. v. Hilburn,* 249 So.2d 379 (Miss.1971) (construing "doing business" provision of statute which barred unqualified corporations from suing in state courts): *Hilbun v. California-Western States Life Insurance Co.,* 210 So.2d 307 (Miss.1968) (construing "doing business" provision of state long arm statute for insurance companies).

This Court has also construed the statute on several occasions. *See Edwards v. Associated Press,* 5 Cir. 1975, 512 F.2d 258 (jurisdiction over defendant predicated upon the commission of a tort); *Dawkins v. White Products Corp.,* 5 Cir. 1971, 443 F.2d 589 (jurisdiction over defendant predicated upon the commission of a tort); *Walker v. Savell,* 5 Cir. 1964, 335 F.2d 536 (construing "doing business" provision of statute before 1964 amendment).

given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

164 So.2d at 790.

This language was subsequently quoted with approval in a series of cases. *See Republic-Transcon Industries, Inc. v. Templeton,* 253 Miss. 132, 175 So.2d 185 (1965); *Breckenridge v. Time, Inc.,* 253 Miss. 835, 179 So.2d 781 (1965); *Collins v. Truck Equipment Sales, Inc.,* 231 So.2d 187 (Miss. 1970). The Court further affirmed in *Smith v. Temco, Inc.,* 252 So.2d 212 (Miss. 1971), that the application of § 13–3–57 was indeed restricted to those cases in which "traditional notions of fair play and of substantial justice" were not offended. *Id.* at 215. *See also Miller v. Glendale Equipment & Supply, Inc.,* 344 So.2d 736 (Miss.1977). As recently as 1976, the Supreme Court has affirmed its earlier holdings that all three factors must be met in order for a resident plaintiff to assert jurisdiction over a nonresident corporation doing business within the state. *See Ga-Pak Lumber Co., Inc. v. Nalley,* 337 So.2d 1270, 1274 (Miss.1976).

Even if we were certain that Norton, by selling its grinding stones for ultimate utilization in Mississippi (and this record does not indicate whether such was the case), had purposefully done some act or consummated some transaction in the state, we think that the Mississippi courts would find that their assumption of jurisdiction over Norton would offend their "traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." It must be remembered that when this cause of action accrued and when the complaint was filed on September 9, 1976, Norton did not have a single employee within the state. It had not then, and has not to the present, ever paid any taxes to the State of Mississippi nor availed itself of the protection of any of her laws. Furthermore, Washington had only availed himself of the protection of Mississippi's laws to the limited extent that he worked and traveled in the state, for he was a Louisiana resident and citizen. In view of the fact that the Mississippi long arm statute is not available to nonresident plaintiffs, a policy which reflects a substantial state interest, *see Breeland v. Hide-A-Way Lake, Inc., supra,* it seems that Mississippi would be hesitant to extend the benefits of its courts to a plaintiff who could not invoke the long arm statute but managed to serve process on a lone corporate employee who moved to the state after the commencement of the lawsuit and then only when some seventeen months had elapsed from the filing of the lawsuit.

In such circumstances, and when one adds the facts revealed in the affidavits, we cannot find that the District Judge abused his discretion in not allowing further discovery into the "quality, nature, and extent of [Norton's] activity in the forum state." We think it clear that the quantum of that activity is less than that found in *Collins v. Truck Equipment Sales, Inc.,* 231 So.2d 187 (Miss.1970), where the Court refused to assert jurisdiction on the grounds that the nonresident defendant corporation was not doing business in the state. *See also Indianola Production Credit Ass'n v. Burnette-Carter Co., Inc.,* 450 F.Supp. 303 (N.D.Miss. 1977) (relying on *Collins* to dismiss complaint); *cf. Holvitz v. Norfleet-Ashley, Inc.,* 369 F.Supp. 394 (N.D.Miss.1973) (finding that extensive corporate activities in state warranted assertion of jurisdiction). Further discovery could not have added any significant facts and would only have been expensive and burdensome for the nonresident corporation.

Therefore, the order of the Court below, which operated as a dismissal of the complaint, is

AFFIRMED.