573 So.2d 699 (1990)
Lawrence Francis CHENIER, III
v.
Sharon Denise Whitfield CHENIER.
No. 89-CA-1181.
Supreme Court of Mississippi.
December 12, 1990.
*700 J. Mack Varner, Varner Parker Sessums & Lancaster, Vicksburg, for appellant.
Eugene A. Perrier, Vicksburg, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal is about personal jurisdiction and amenability thereto and presents a variation on two familiar themes, viz., first, that a spouse may not abandon his or her Mississippi spouse and family, move to another state, and thereby avoid suit here, and, second, that a non-resident who claims immunity from process while attending a judicial proceeding in this state may prevail only where he otherwise in law had such immunity.
The Chancery Court held the absconding husband subject to personal jurisdiction here and, on his wife's complaint, decreed him divorced. We affirm.

II.
Lawrence Francis Chenier, III, (Lawrence) claims that he is an adult resident citizen of Tallulah, Louisiana. Chenier is a physician by profession and is licensed to practice medicine in the State of Louisiana and has been so since 1980. Chenier was the Defendant below and is the Appellant here.
Sharon D. Chenier (Sharon) is an adult resident citizen of Vicksburg, Mississippi, was the Plaintiff below and is the Appellee here.
On July 3, 1982, Lawrence and Sharon were married in New Orleans, Louisiana. Shortly thereafter the parties moved to Vicksburg, Mississippi, and set up housekeeping there. Dr. Chenier established his medical office just across the river at 900 Johnson Street in Tallulah, Louisiana, where he engages in what is commonly referred to as a general or family practice.
Two children were born to Sharon and Lawrence in the course of their marriage, Shira Yvonne Chenier, born November 13, 1982, and Leah Frances Chenier, born June 15, 1984. For a number of years through and including the date of last separation, the Chenier family resided at 100 Colonial Drive in Vicksburg, and Sharon and the children continue to live there.
*701 Lawrence Chenier says that he moved from Vicksburg and established his domicile in Tallulah, Louisiana, at 402 West Askew Street, in August of 1988. It was a funny sort of change of domicile. For one thing, Lawrence did not tell anybody he was changing his residence. Although he had a place to sleep in Tallulah, which he had maintained for years before incident to the demands of his medical practice, Lawrence continued to frequent his home in Vicksburg "to see the children," as he put it. He continued to have sexual relations with Sharon although he insists this was "infrequent" and always "at her request." Lawrence maintained medical supplies and equipment and personal effects in the Vicksburg residence, photographs of which were received as evidence. Notwithstanding, Lawrence insists in August of 1988 he officially changed his domicile to Louisiana. Evidencing this action, Lawrence says he has registered to vote in Madison Parish, Louisiana, attained a Louisiana driver's license, purchased Louisiana tags for his cars, and has done a number of other acts, e.g., banking, buying property, paying taxes, etc., which are wholly equivocal on the point of state of domicile.
On April 4, 1989, some eight months after Lawrence allegedly moved out and changed his domicile, Sharon Chenier filed in the Chancery Court of Warren County her complaint for divorce charging, alternatively, (1) habitual cruel and inhuman treatment, Miss. Code Ann. § 93-5-1 [Seventh] (1972); (2), "notorious adultery," Miss. Code Ann. § 93-5-1 [Second] (1972) and (3) irreconcilable differences, Miss. Code Ann. § 93-5-2 (Supp. 1988).
What happened next is important. Sharon had process issued for Lawrence and the summons was delivered to the Sheriff for service under Rule 4(c)(2), Miss.R. Civ.P.[1] On the same day, while Lawrence was physically present in the Warren County Courthouse in Vicksburg, the Sheriff served him with summons and a copy of the complaint. See Rule 4(d)(1)(A), Miss.R. Civ.P.[2] Without dispute, the reason Lawrence Chenier was present in the Courthouse on April 4, 1989, was that he was appearing specially in response to summons Sharon had caused to be served upon him in another action, one for domestic abuse, designated as Case No. 33,415 on the docket of the Chancery Court of Warren County, Mississippi.[3]
In due course, Lawrence Chenier appeared specially in the present action and moved to dismiss for lack of personal jurisdiction. See Rules 12(b)(2) and (5), Miss.R. Civ.P. He argued first that he was a resident of Louisiana and not amenable to suit in Mississippi and, second, that he could not be effectively served with process and subjected to the jurisdiction of the court while in Mississippi and attending court in another matter.[4] The motion came on to be *702 heard, and on May 10, 1989, the Chancery Court held that it
... has personal jurisdiction of the defendant, Lawrence F. Chenier, as no exception is effective against the actual admitted service [of process]. Adjudication of the legal domicile of the defendant is unnecessary.
Whereupon, the Court denied the motion to dismiss.
The matter proceeded to trial and on September 28, 1989, the Chancery Court granted Sharon Chenier's plea for divorce on grounds of adultery, and in a detailed decree provided for the care and custody of the children, visitation rights, alimony, child support and the like, none of which are directly challenged.

III.
Lawrence Chenier appeals and argues only that he was never effectively subjected to in personam jurisdiction in the State of Mississippi and in the Chancery Court of Warren County. Lawrence says this though, while he was physically present in the courthouse in Vicksburg, the Sheriff of Warren County personally served upon him a copy of the summons and complaint. Nor does Lawrence deny he was served with process in conformity with the requirements of our procedural rule prescribing the manner of the service of process, Rule 4(c)(2) and (d)(1)(A). McDaniel v. Ritter, 556 So.2d 303, 307 fn. 4(4) (Miss. 1989).
Lawrence appeared specially in the Chancery Court to contest personal jurisdiction and process. Under our law he may do so, without thereby entering a general appearance. See Gough v. Mabsco, Inc., 335 So.2d 910, 911 (Miss. 1976); McGrath Corp. v. Vera Cruz CIA Naviera S.A., 256 So.2d 505, 510 (Miss. 1971); Mladinich v. Kohn, 250 Miss. 138, 155-56, 164 So.2d 785, 793-94 (1964). This view has survived the advent of the Mississippi Rules of Civil Procedure, effective January 1, 1982.
Here, as below, Lawrence appears under the illusion that he may avoid suit here, if only he may show he had established Louisiana as his domicile and state of legal residence. Here, as below, he presents much proof and argument predicated on this premise. He is off the mark. Lawrence has since 1982 engaged in a systematic course of purposeful activities in Vicksburg and Warren County of this state, such that his change of domicile, if any, has little or nothing to do with whether he was amenable to adjudication of his important rights in this state on his wife's complaint for divorce. Mississippi law affirmatively provides that, where married parties have resided in Mississippi and made their domicile here, and where one spouse, incident to the marital separation, leaves this state and attempts to establish a new domicile in another state, the departing spouse is amenable to personal jurisdiction in this state in his or her spouse's action here for divorce. See, e.g., Penton v. Penton, 539 So.2d 1036 (Miss. 1989) (parties resided in Pearl River County, Mississippi, until March of 1985; husband moved to Bakersfield, California, and was served with process four months later); Fliter v. Fliter, 383 So.2d 1084 (Miss. 1980) (parties resided in Biloxi, Mississippi, until March, 1977; defendant left Mississippi in October of 1977 and moved to Denver, Colorado; process quashed because plaintiff failed to comply with other procedural requisites); McDaniel v. Ritter, 556 So.2d 303, 307 fn. 4(3) (Miss. 1989). This rule is no less enforceable that it be the by-product of this Court's exercise of its appellate jurisdiction instead of being in statutory form.
Independently, there is the question of constitutional amenability. We refer to the rights a non-resident defendant enjoys under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and, as well, under this state's Due Process Clause. Miss. Const. Art. 3, § 14 (1890). It may well be that in-state personal service upon a physically present defendant is sufficient under the old power theory of personal jurisdiction. See Administrators of the Tulane Educational Fund v. Cooley, 462 So.2d 696, 701-02 (Miss. 1984); see also, Read v. Sonat *703 Offshore Drilling, Inc., 515 So.2d 1229, 1230 (Miss. 1987); New Orleans J. & G.N.R. Co. v. Wallace, 50 Miss. 244, 248-249 (1874). Such may also be sufficient to satisfy the defendant's due process rights. Burnham v. Superior Court of California, 495 U.S. ___, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (married couple resided in New Jersey; wife moved to California and took children and filed suit in California; husband came to California on business trip and stopped by San Francisco Bay area to visit children; wife had husband served with California process). Whatever the minimum standards may be, we have no doubt that physical presence of the defendant in this state at the time personal service of process was had, coupled with the fact that the defendant for years was domiciled in this state and left this state incident to separation from his spouse and family, are more than sufficient minimum contacts with this state, so that requiring the defendant to submit here to an adjudication of his important rights does not offend "traditional notions of fair play and substantial justice." See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and progeny; see also, McDaniel v. Ritter, 556 So.2d at 307 fn. 4(1); and Camp v. Roberts, 462 So.2d 726, 727 (Miss. 1985).

IV.
Notwithstanding these considerations, Chenier argues that he was immune from service of process while he was appearing as a party in an "unrelated" action. This Court has long recognized the rule that a non-resident otherwise not amenable to suit enjoys immunity from civil process when he appears in this state as a party or witness. Arnett v. Carol C. and Fred R. Smith, Inc., 165 Miss. 53, 67, 145 So. 638, 641 (1933); see also, Pierce v. Alleluia Cushion Co., Inc., 397 F. Supp. 338, 342 (N.D.Miss. 1975). Nothing in the Mississippi Rules of Civil Procedure, nor particularly Rule 4 thereof, displaces this rule.
What is unusual about today's case is that we face, for the first time, a claim of immunity by one who is otherwise clearly amenable to suit here. As explained above, even if Lawrence Chenier has effectively changed his domicile to Louisiana, his argument, that he has thereby placed himself beyond the jurisdiction of the Mississippi courts, borders upon the frivolous. Personal service of process was effected upon him in compliance with Rule 4(c) and (d). Notwithstanding, he argues "immunity" because he was served while appearing as a party in another action.
The reasons for the immunity rule are good and sufficient. The administration of justice requires the attendance of all witnesses possessing information or evidence relevant to a cause and we extend to non-residents an immunity to civil process when appearing to give testimony, whether they appear under subpoena or not. Parties are entitled to a like immunity, in view of the strong public policy of affording a litigant the opportunity to have his day in court, although the immunity rule was developed in the case of parties long before the advent of International Shoe, long-arm statutes, and the like. Suffice it to say that the circumstances in which a non-resident party might appear personally and not be amenable to suit in this state on an unrelated action are today far fewer than they were when the immunity rule was announced.
The premise that controls today has been present through the years but never presented for precise argument or decision. The importance of having all witnesses available for a judicial proceeding and, as well, for allowing parties to litigate in our courts, has been thought sufficiently strong that we should exempt witnesses and parties from process in unrelated actions. But the sub silentio premise of the rule has always been that the witnesses and parties entitled to this immunity were persons who otherwise could not be sued in Mississippi; that is, were it not for the fact that they had come to Mississippi as a witness or a party, there would be no way to serve them with process and subject them to personal jurisdiction here. The rule is one of fairness. Where these considerations obtain, the immunity rule is as solid as ever. We give it effect by requiring *704 that a party, urging its inapplicability, bears the twin burdens of production and persuasion that the non-resident was otherwise wholly amenable to suit here  as a matter of state power, federal and state due process, state amenability, and state procedural rule. See McDaniel v. Ritter, 556 So.2d at 307 fn. 4. It is wholly unfair to require a non-resident to do his civic duty and come to Mississippi and appear as a witness and give testimony in our courts at the cost of waiving an immunity to suit he would otherwise enjoy here. Similar fairness considerations attend the case of a non-resident party.
On today's facts, the fairness considerations point in the opposite direction. Without regard to whether Lawrence Chenier effectively changed his domicile to Louisiana, see Newman v. Newman, 558 So.2d 821, 825 (Miss. 1990); Smith v. Smith, 194 Miss. 431, 434, 12 So.2d 428, 429 (1943), there can be no question but that he was wholly amenable to his wife's divorce action in Mississippi. Holding present process effective does not require that, as a condition of appearing in the unrelated action, Lawrence Chenier waive any right he, under any conceivable circumstances, would otherwise have enjoyed. See Sanders v. Smith, 197 Miss. 304, 20 So.2d 663, 664 (1945) (rejecting a claim of immunity offered by a non-resident attending trial in a previous action where plaintiff took a non-suit, refiled, "and had summons issued at once, which was served on ... the defendant, as he was leaving the courthouse." 20 So.2d at 663.)
For these reasons, the Chancery Court was imminently correct when it overruled Lawrence's contest of personal jurisdiction in this state.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Rule 4(c)(2) reads as follows:

(2) By Sheriff. A summons and complaint shall, at the written request of a party seeking service or such party's attorney, be served by the sheriff of the county in which the defendant resides or is found, in any manner prescribed by subdivision (d) of this rule. The sheriff shall mark on all summons the date of the receipt by him, and within thirty days of the date of such receipt of the summons the sheriff shall return the same to the clerk of the court from which it was issued.
[2] Rule 4(d)(1)(A) reads as follows:

(d) Summons and Complaint: Person to Be Served. The summons and complaint shall be served together. Service by sheriff or process server shall be made as follows:
(A) by delivering a copy of the summons and of the complaint to him personally or to an agent authorized by appointment or by law to receive service of process; ... .
[3] On March 29, 1989, Sharon filed in the Chancery Court of Warren County a "Complaint For Protection From Abuse." She alleged that on March 25 and 26, 1989, Lawrence had become abusive and "has previously made threats to kill her and that he had exhibited a gun." Claiming she was in fear for her safety and that of the children, she sought an order that Lawrence vacate the marital home at 100 Colonial Drive in Vicksburg and "stay completely away" there-from.
[4] In a matter not asserted on the present appeal, Lawrence also charged that the District Court of Madison Parish, Sixth Judicial District, in the State of Louisiana, had jurisdiction over the parties and the subject matter by reason of an action he had filed March 31, 1989, for a "legal separation." We are afforded a transcript of a preliminary skirmish in the Louisiana proceedings but are not advised of the present status thereof or whether there has been a final order, judgment or decree.