609 So.2d 357 (1992)
SOUTHERN PACIFIC TRANSPORTATION COMPANY
v.
Dudley Wayne FOX.
No. 89-CA-0381.
Supreme Court of Mississippi.
July 22, 1992.
Rehearing Denied December 31, 1992.
Charles G. Copeland, Michael W. Baxter, Copeland Cook Taylor & Bush, Jackson, for appellant.
William W. Ramsey, C.E. Sorey, II, Ramsey & Sorey, Vicksburg, Mitchell H. Tyner, Wm. Roberts Wilson, Jr., P.A., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Today's appellant  a railroad whose tracks lie entirely west of the Mississippi  has been successfully sued on a Texas tort *358 and appeals, asking that we hold there is nothing within the positive law of this state that renders the railroad amenable to suit here. On a fair reading of our non-resident amenability rules, the railroad is right.
We reverse.

II.
Dudley Wayne Fox, thirty-seven, is an adult resident citizen of Texas, residing at 1218 Crestridge, Ennis, Texas. In the Spring of 1987, Fox was employed with Southern Pacific Transportation Company, a railroad corporation having its principal place of business in Lafayette, Louisiana, but not qualified to do business in Mississippi. Fox was the Plaintiff below and is the Appellee here. Southern Pacific was the Defendant below and is the Appellant here.
On April 19, 1987, Fox was serving as a railroad brakeman and was working in Southern Pacific's railroad yards in Hearne, Texas. Late that afternoon, Fox discovered an open plug door on one of the rail cars. After reporting the fact, Fox aided and assisted Southern Pacific's trainmaster, R.A. McCall, in an effort to close the plug door on boxcar No. SP6971186 with the use of a "come-along." During this process, the come-along slipped and struck Fox on his left hand, causing severe and disabling personal injuries.
Fox is a total Texan. There is no suggestion he has ever had anything to do with Mississippi prior to this action. Soon after his accident, Fox engaged the services of Herschel L. Hobson, attorney, of Port Arthur, Texas. On May 13, 1988, Fox invoked rights afforded him under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., and filed his complaint against Southern Pacific in the District Court of Jefferson County, Fifty-Eighth Judicial District, Texas, Docket No. A129136. Without dispute, process was served on Southern Pacific's registered agent in Houston, Texas.
For reasons not made apparent, on July 12, 1988, Fox, having employed Vicksburg counsel, filed an almost identical complaint in the Circuit Court of Warren County, Mississippi, again naming Southern Pacific as defendant and invoking his FELA rights.[1]
On November 23, 1988, the District Court in Beaumont, Texas, dismissed Fox's Texas action without prejudice.
Southern Pacific answered and as its "First Defense" denied that it was amenable to personal jurisdiction in the State of Mississippi. Southern Pacific thereupon filed a separate motion to dismiss under Rule 12(b)(2), Miss.R.Civ.P., and the matter of Southern Pacific's amenability to suit in Mississippi thereafter became a principal subject of pre-trial litigation. On November 28, 1988, the Circuit Court entered its order denying the motion to dismiss. The matter proceeded to trial in the Circuit Court of Warren County, and in due course the jury returned a verdict in favor of Fox and against Southern Pacific in the amount of $200,000.00. Final judgment was entered thereon.
Southern Pacific now appeals to this Court.

III.

A.
Southern Pacific presents but a single *359 issue.[2] It claims the Circuit Court erred when it denied the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Southern Pacific argues this state has no law that affirmatively provides non-resident corporations, factually situated as is Southern Pacific, are amenable to suit in here in tort actions such as this.
For clarity, the issue is wholly independent of constitutional due process concerns, the familiar soundbite expressions of which are "minimum contacts" and "fair play and substantial justice" flowing from International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and progeny. This due process shield  "immunity" might be a more accurate term, Administrators of the Tulane Educational Fund v. Cooley, 462 So.2d 696, 702 (Miss. 1984), is conceptually and legally distinct from today's issue and, indeed, is irrelevant thereto.[3]
All agree that Southern Pacific's tracks lie exclusively west of the Mississippi River. From time to time, Southern Pacific undertakes for hire the transportation of goods to and from points east of the Mississippi. In that connection it has business arrangements with Mid-South Railroad Company, Illinois Central Gulf Railroad Company, and Burlington Northern Railroad Company, each of which, from time to time, receives eastbound shipments of cargo from Southern Pacific and transports those in interstate commerce across this state or delivers west-bound cargo to Southern Pacific after a trans-Mississippi shipment. Moreover, it appears Southern Pacific owns and operates a trucking company which transports cargo in interstate commerce and, from time to time, carries freight for hire through and across this state. We find in the record a list of forty-two companies in this state with business relationships with Southern Pacific, generally by way of contracts of carriage. For example, the Southern Pacific regularly carries freight for Batesville Casket Company, domiciled in Panola County, Mississippi. Assorted other business arrangements with Mississippi firms are shown, including a law firm in Greenville, Mississippi, but what is important is not a word in the record suggests Dudley Wayne Fox or his accident in the railyard at Hearne, Texas, have even the slightest connection with this state or with any business Southern Pacific does here.
Southern Pacific has not qualified to do business in Mississippi and has no agent for process in this state, nor does the record reflect the name of any other officer, agent, employee, or personnel within this state. In spite of this general talk about business activities with Mississippi firms, Fox's proof in no way suggests that there is a single warm-bodied human being in this state upon whom process might be served effectively, nor that there is a single identifiable fixed asset here that might be attached.

B.
The parties' principal battleground is our most familiar long-arm statute, Miss. Code Ann. § 13-3-57 (Supp. 1988). That statute is an affirmative declaration of conditions upon which non-residents such as Southern Pacific may be held amenable to suit in this state. Referring to non-resident corporations not qualified to do business here, it provides amenability for those
who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or non-resident of this state, or who shall do any business or perform any character of work or service in this state, ... . *360 The statute then provides that any non-resident coming within any of these three descriptions  contract, tort, or doing business 
shall by such act or acts be deemed to be doing business in Mississippi.
Of importance, such "act or acts" renders the non-resident amenable to suit here only
in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto,... .
A nexus requirement has always been in our long arm statute, and a bit of archeology makes this apparent. Prior to 1964, it was settled law that our "doing business" long arm statute was limited.
The cause of action must arise from, or be connected with such act or transaction.
Mladinich v. Kohn, 250 Miss. 138, 148, 164 So.2d 785, 790 (1964). In 1964 the legislature acted, Miss. Laws ch. 320 (1964), and added the "tort" and "contract" grounds for non-resident amenability to suit here. It made no substantive change in the Mladinich nexus limitation on "doing business" amenability.[4] In 1978 and 1980 the statute was further amended, but the nexus test quoted above was was re-enacted verbatim. Miss. Laws ch. 378, § 1 (1978); and Miss. Laws ch. 437, § 1 (1980). All who looked at the point have seen the successive generations of the act continuing the nexus rule.[5]See Applewhite v. Metro Aviation, Inc., 875 F.2d 491, 494 (5th Cir.1989); Rittenhouse v. Mabry, 832 F.2d 1380, 1385 (5th Cir.1987); Smith v. DeWalt Products Corp., 743 F.2d 277, 279 (5th Cir.1984); Mills v. Dieco, Inc., 722 F. Supp. 296, 298 (N.D.Miss. 1989); Thompson v. F.W. Woolworth Co., 508 F. Supp. 522, 523 (N.D.Miss. 1981).

C.
Fox concedes he is not within the contract or tort prongs of Section 13-3-57. Nothing in the record remotely suggests that his action arises out of a contract in this state. He sues Southern Pacific in tort but makes no claim that Southern Pacific has committed this "tort in whole or in part in this state."
For his third strike, Fox presses the point that Southern Pacific may well have done "any business or perform[ed] any character of work or service in this state." Southern Pacific quickly replies that, though this be so, the nexus test is not met. The fact Southern Pacific may have done business in this state does not render it amenable to suit under Section 13-3-57 unless Fox's action "accrued ... from such ... [business] ..., or as an incident thereto, ... ."
We had this language before us in McDaniel v. Ritter, 556 So.2d 303 (Miss. 1989), and said:
The long-arm statute requires no direct nexus to the non-resident's business done here, only that the claim be incident thereto. The statute thus requires far less than that the liability generating conduct have occurred in Mississippi.
McDaniel, 556 So.2d at 309. McDaniel was a wrongful death action brought on behalf of survivors of a businessman/passenger killed in a small aircraft crash in *361 Missouri. Defendant's decedent lived in Mississippi and was an officer, director and shareholder of a Mississippi corporation which did substantial business in Mississippi and on whose behalf defendant's decedent and plaintiff's decedent were acting in connection with their fatal flight to Missouri. On those facts, we held
the Plaintiffs Ritter's claim to have arisen out of facts sufficiently incident to business done by Speaks in Mississippi that Speaks' estate is amenable to suit here under Section 13-3-57.
McDaniel, 556 So.2d at 309.
Today's facts are in sharp contrast with McDaniel. There is no suggestion in the record of any aspect of Fox's claim having any connection with Southern Pacific's business activities in this state. Indeed, at argument, Fox's counsel virtually conceded that, if we were to hold Southern Pacific amenable to suit here on the present claim, on grounds it is related to Southern Pacific's business done in interstate commerce, we might as well get ready to host the litigation of every FELA case Southern Pacific is ever called to defend, no matter how removed the plaintiff or the lex loci may be from Mississippi. Neither in fact nor in law did Fox's action accrue from Southern Pacific's business in Mississippi, nor was it an incident thereto.[6]See, Herrley v. Volkswagen of America, Inc., 598 F. Supp. 690, 692 (S.D.Miss. 1984); Thompson v. F.W. Woolworth Co., 508 F. Supp. 522, 523 (N.D.Miss. 1981).

D.
Sensing the frailty of his judgment under Section 13-3-57, standing alone, Fox retorts with law from other sources. First, he cites a series of cases in the United States Supreme Court and in this Court and says they hold a causal nexus is not necessary before we may hear a suit against a non-resident corporation. See, e.g., Helicopters Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984); Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Williams v. Taylor Machinery, Inc., 529 So.2d 606, 608 (Miss. 1988); Administrators of the Tulane Educational Fund v. Cooley, 462 So.2d 696, 703 (Miss. 1984). But these are all due process cases.[7] The question is not whether Mississippi could constitutionally subject Southern Pacific to personal jurisdiction, but whether it has, by statute or otherwise. Jones v. Chandler, 592 So.2d at 971; Chenier v. Chenier, 573 So.2d at 702. Looking at Section 13-3-57 standing alone, we have little difficulty answering in the negative.

E.
Fox seeks safe haven in Shewbrooks v. A.C. & S., Inc., 529 So.2d 557 (Miss. 1988), but that case is of little aid. The Court begins
There is no serious contention on appeal that the Circuit Court lacked personal jurisdiction of the defendants, all of which do business in Mississippi and are subject to process in this state.
Shewbrooks, 529 So.2d at 559. We are there given no details of the sort that would be necessary to see if this case is legally analogous.
Shewbrooks did hold non-resident, non-qualified firms amenable to suit here. The holding made perfect sense at the time, for our statute books then contained Miss. Code Ann. § 79-1-27 (1972), which read:
Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action *362 accrued in this state or not. [Emphasis supplied]
Effective January 1, 1988, the legislature repealed Section 79-1-27. See Miss. Laws, ch. 486, § 17.05 (1987). Fox did not file the present civil action until some six and a half months later  on July 12, 1988  to be exact. The repeal of Section 79-1-27 strips Williams v. Taylor Machinery, Inc., 529 So.2d at 608, and Arrow Food Distributors, Inc. v. Love, 361 So.2d 324, 327 (Miss. 1978), and Aycock v. Louisiana Aircraft, Inc., 617 F.2d 432, 434 (5th Cir.1980), of any precedential or persuasive effect as well.

F.
Independently, Fox marshalls Administrators of the Tulane Educational Fund v. Cooley, supra, and Arrow Food Distributors, Inc. v. Love, supra. It is true that each of these actions allow a plaintiff to proceed quasi in rem against the property of a non-resident defendant, the underlying claim in each being tort actions that accrued in a foreign state unrelated to the non-resident defendant's Mississippi activities. Tulane and Arrow Food were both chancery attachment actions, see Miss. Code Ann. § 11-31-1, et seq. (Supp. 1991). In each, the non-resident had property or effects in this state which were, in fact, seized in this state. Dudley Wayne Fox does not so proceed. The record is sprinkled with hints that Southern Pacific may have been subject to an attachment action, but no hint that Fox has in fact attached, seized or even specifically identified in this state anything belonging to Southern Pacific.

G.
Fox invokes two increasingly familiar provisions of our state constitution. Miss. Const. Art. 3, § 24 (1890) reads:
All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.
Miss. Const. Art. 3, § 25 (1890) follows with:
No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both.
Fox argues that as a Texan and a non-resident of Mississippi, he enjoys the protection of Sections 24 and 25, and in this he is certainly correct. Tri-State Transit Co. of Louisville v. Mondy, 194 Miss. 714, 12 So.2d 920 (1943); Pullman Palace-Car v. Lawrence, 74 Miss. 782, 22 So. 53 (1897); Chicago, St. Louis & New York Railroad Co. v. Moss and Co., 60 Miss. 641 (1882). But none of this carries us far, for nothing in Sections 24 and 25 strips a non-resident defendant of his right to question personal jurisdiction and have his question resolved by a fair application of this state's positive prescriptions which non-residents shall be amenable to suit in this state and on what sort of claims.
The same may be said of Fox's resort to Miss. Const. Art. 7, § 193 (1890), protecting railroad employees' right to sue. Again, the fact that Fox is a Texan suing on a Texas tort is not what has his judgment at risk. That stems from the fact that he has yet to point to any rule of law that renders Southern Pacific amenable to this suit in this state. Not one word in Section 193 directly or indirectly is of aid to him.

H.
Finally, Fox invokes the FELA itself but misreads the act. The FELA provides a regime of concurrent federal and state jurisdiction, 45 U.S.C. § 56, but this refers to subject matter jurisdiction. As a matter of federal law, an injured railroad worker may sue in a court of a state of otherwise competent jurisdiction and may thereupon fully litigate his claims. See, e.g., Illinois Central Gulf Railroad Co. v. Willie Mae Gibbs, 600 So.2d 944 (Miss. 1992); Lambert v. Illinois Central Gulf Railroad Co., 547 So.2d 50 (Miss. 1989); Illinois Central Railroad Co. v. Coussens, 223 Miss. 103, 77 So.2d 818 (1955). Nothing in the act addresses the *363 matter of personal jurisdiction in the state court. The language Fox notes in Section 56 speaks to venue of actions in federal courts, not personal jurisdiction in state courts. Baltimore and Ohio Railroad Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 9, 14, 86 L.Ed. 28 (1941); Douglas v. New York, N.H.R. Co., 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929). It is certainly true that under the FELA, trial by jury is part of the remedy which Congress has afforded injured railroad workers, Boeing Co. v. Shipman, 411 F.2d 365, 371 (5th Cir.1969), but not necessarily a Warren County, Mississippi, jury.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., and PRATHER, SULLIVAN, and PITTMAN, JJ., concur.
DAN M. LEE, P.J., dissents with written opinion joined by HAWKINS, P.J., and McRAE, J.
BANKS, J., not participating.
DAN M. LEE, Presiding Justice, dissenting:
I believe Fox had standing to bring the suit, and in so stating I am relying upon Shewbrooks v. A.C. & S., Inc., 529 So.2d 557 (Miss. 1988), Arrow Food Distributors, Inc. v. Love, 361 So.2d 324 (Miss. 1978), and Aycock v. Louisiana Aircraft, Inc., 617 F.2d 432 (5th Cir.1980).
In Shewbrooks, it is stated:
"There is no serious contention on appeal that the circuit court lacked personal jurisdiction of the defendants, all of which do business in Mississippi and are subject to process in this state. This ground of dismissal needs little discussion.

The fact that a plaintiff and a defendant are non-residents of a state in a transitory cause of action which accrued in another state does not, in and of itself, deprive a court of lawful authority (i.e., "jurisdiction") to hear the case, and this is universally recognized in all courts.

This familiar principle of law was settled in this state long ago in Pullman Palace Car Co. v. Lawrence, 74 Miss. 782, 22 So. 53 (1897)... ."
Shewbrooks at 559 (emphasis added).

Common Law Allowed This Suit
The majority would have us believe that the repeal of sec. 79-1-27 deprives our state courts of jurisdiction in cases such as this one, notwithstanding the fact that the repealed statute is not even mentioned in Shewbrooks. The predecessor to sec. 79-1-27 was enacted in 1906, and was not in existence when Pullman Palace was decided. The only way to ascertain the effect of the repeal of sec. 79-1-27 is to look at the state of the common law prior to the enactment of the statute. Hence we may look to Pullman to see what the common law was prior to enactment of sec. 79-1-27:
(W)e had supposed there was, in our own state, no ground left for dispute that, in transitory actions, whether in tort or in contract, our courts were wide open to any suitor, resident or nonresident, against his adversary, whether resident or nonresident, whether a natural person or an artificial one, regardless of where the right of action occurred, if only the courts had jurisdiction of the subject-matter, and could obtain jurisdiction of the party, either a voluntary appearance, or by service of process. We are aware that there is some divergence of opinion on this subject between the courts of last resort in this country, and that apparent authority can be found for holding that a foreign corporation resident in one state may not be sued in another state by a resident of the first state on a cause of action arising in the first state. But even these cases will be found to be governed by the peculiar statutes of the state declining to take jurisdiction, or that the refusal to take jurisdiction rested upon some unusual circumstances which deterred the court from entertaining the suit, or because of a supposed distinction between statutory rights and common law rights. But in many states, and amongst them our own, the rule we first announced has been firmly established by repeated adjudications. The rule was first expressly *364 declared in our own state in the case of the New Orleans, Jackson, & Great Northern Railroad Co. v. Wallace, 50 Miss. 244 [1874]. That was an action brought by Wallace against the railroad company, a foreign corporation, in one of the courts of this state, for the recovery of damages for injuries sustained by him in a collision of trains in the State of Louisiana. The court said then, on this very question: "Corporations are artificial persons, existing only in contemplation of law. They must dwell in the place of their creation, and cannot migrate to another state. But they are liable to be sued, like natural persons, in transitory actions arising ex contractu or ex delicto, in any state where legal process can be had... . In transitory actions, foreign private corporations, like natural persons, may be sued anywhere where the court can obtain jurisdiction of the corporation either by legal service of process or by its appearance by attorney." Whether Wallace was a citizen of or resident of Mississippi nowhere appears in the reported case, and that fact must have been thought by the court to be wholly immaterial to a proper determination of the question of the amenability of a foreign corporation, for a wrong done in a foreign state, to the jurisdiction of our courts.

Pullman Palace 74 Miss. at 796-97, 22 So. 53 (emphasis added).
Thus we can easily see that prior to enactment of the statute, a lawsuit such as the one brought by Fox in the instant case was permissible in Mississippi. From there it is a short hop to reach the conclusion that the statute was not necessary, and therefore the repeal of the statute does not affect Fox's right to sue in the courts of our state.
Nowhere in Shewbrooks is sec. 79-1-29 even mentioned. This court did not feel that the statute was necessary for jurisdiction over the foreign corporation, for the reason that the corporation was doing business in our state, and should rightfully be subject to our jurisdiction.
Thus we can conclude that the repeal of sec. 79-1-27 does not affect Fox's right to bring his action to our courts.
The majority would have us distinguish Aycock and Arrow Food because the plaintiffs in those cases were all Mississippi residents. However, the residence of the plaintiff does not determine the court's exercise of jurisdiction; we already know that the statute relied upon by the majority was not necessary for jurisdiction over a foreign corporation doing business in our state, and thus the repeal of the unnecessary statute should not make any difference.
This is especially evident in light of the emphasized portion of Pullman Palace quoted above and in light of Wallace cited therein. Indeed, it wasn't even noted which state the plaintiff Wallace resided in, the court not thinking enough of this issue to even mention it in its reported decision.
The failure to mention the residence of the plaintiff was the norm, and not the exception, in the early Mississippi decisions on the question of jurisdiction over a foreign corporation found to actually be doing business within the borders of our state. Besides Pullman Palace and Wallace, the cases of Chicago, St. Louis and New Orleans Railroad Co. v. Doyle, 60 Miss. 977 (1883), and McMaster v. Illinois Central Railroad Co., 65 Miss. 264, 4 So. 59 (1887) also dealt with transitory causes of action brought in the courts of this state against railroads for damages allegedly suffered in other states, and in neither of the reported decisions is the plaintiff's state of residence even mentioned. Thus we can readily see that Mississippi has traditionally enforced its jurisdiction over foreign corporations found to be doing business in our state, regardless of the residence of the plaintiff and regardless of the location of the cause of action.
Cases which predate the repealed statute apply the same standard of law that this court applied in Shewbrooks, and I conclude that this state has jurisdiction over the case at bar unless we are today prepared to overrule Shewbrooks, Pullman *365 Palace, Wallace, Doyle, and McMaster. This I am not prepared to do.

International Shoe Controls
Thus I would have Mississippi remain within the ranks of the majority of the states in interpreting our long-arm statute to reach the limits allowed by the constitution, 27 A.L.R.3d 397, 403, 418, as was established in International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[1] Indeed, in other contexts, we have already done so.
In Jones v. Chandler, 592 So.2d 966 (Miss. 1991), the plaintiff was an unwed mother who filed a paternity and support action against a Tennessee resident, alleging that he was the father of her child. The author of the majority in the case sub judice (Justice James L. Robertson), writing for this court, first determined that our long-arm statute, sec. 13-3-57, could be used to compel the defendant to appear in Mississippi and defend the action:
... Section 13-3-57's catchall  "do any business or perform any character of work or service in this state"  is so broad that it belies any suggestion it be limited to commercial activities.
The states' legal long arms commonly take statutory form, but this does not have to be. It is a fact of history that state courts once took an unfortunately restrictive view of their powers over non-residents. See Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). Recognizing that the interests of their citizens required more, the legislatures of the several states stepped forward and provided what are commonly known as long-arm statutes, but there is no reason on principle or power why the courts could not have done the same thing. There is no reason why the existence of these long-arm statutes should be taken to preclude the courts' common law lawmaking powers absent, of course, legislative expression to the contrary. To suggest that long-arm amenability rules may be only statutory in form and legislative in source is to confuse the familiar with the necessary and thus fall into fallacy.
Jones v. Chandler, 592 So.2d at 971 (emphasis added).
The author of today's majority then cited Chenier v. Chenier, 573 So.2d 699, 702 (Miss. 1990) for the proposition that our courts may exercise jurisdiction over non-residents, within the confines of International Shoe, absent any specific legislative directive to the contrary.
As authority for this proposition, he wrote that Chenier "specifically accepts that the legal rule rendering the non-resident amenable to suit here is non-legislative in source and non-statutory in form." Chandler at 971 (quoting Chenier, 573 So.2d at 702) (emphasis added).
Chandler then goes on to say:
... We find power in the public policy expression in the last paragraph of our general long-arm statute, Miss. Code Ann. sec. 13-3-57... .
Chandler, 592 So.2d at 971.
Likewise we find power in sec. 13-3-57 (Supp. 1991), wherein it is stated that "any non-resident person, general or limited partnership, or any foreign or other corporation ... who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state." (Emphasis added). Thus the statute on its face would authorize jurisdiction over any person or corporation with the minimum International Shoe contacts within this state. To arbitrarily say that this court has the authority to hale an (alleged) father *366 into our court system against his will, but that we do not have the authority to haul a nonresident corporation into court here, when the nonresident corporation has more than sufficient minimum contacts so as not to offend the traditional notions of fair play and substantial justice, would be hypocritical.
I have also concluded that our court does not have any problems under the International Shoe test because Southern Pacific does do substantial business in Mississippi, could reasonably expect to be haled into court here, and such action would not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington.
Southern Pacific transports cargo across Mississippi in trains and in trucks, and the company has business relationships with at least 42 Mississippi companies, firms with which it regularly does business for a profit. This is an adequate connection between the defendant and the state for our courts to exercise jurisdiction over Southern Pacific. International Shoe, supra.

Forum Non Conveniens Aspect
Just as the defendants in Shewbrooks, supra, did not want to tote fair with the plaintiff, neither did Southern Pacific Transportation Company in this case. Let me demonstrate.
In Shewbrooks, after the statute of limitations had expired in New Jersey and Pennsylvania, the plaintiff came to Mississippi and filed his suit. Now the appropriate and obvious thing for the defendants to have done there was to move for a dismissal of the cause, in order that it could be heard in either Pennsylvania or New Jersey, on the principle of forum non conveniens. But they did not want to do that. Why? There is another rule of law which says that before one state will dismiss a complaint under the forum non conveniens doctrine, if the case is barred by the statute of limitations in the more appropriate forum, the defendant must agree to waive this defense. The defendants in Shewbrooks did not want to waive this defense of statute of limitations, and so they did not move for a dismissal on the ground of forum non conveniens. Instead, they claimed Mississippi did not have "jurisdiction" to hear the case.
In this case Southern Pacific Transportation Company is obviously doing business in Mississippi, albeit in a modest way. Legally, this corporation is "in" Mississippi just as much as an individual living here.
Southern Pacific could easily have moved for a dismissal on the grounds of forum non conveniens. If the case was not barred by the Texas statute of limitations (or, if barred, if Southern Pacific was willing to waive the defense), and the judge refused to dismiss in order that the case could be tried in Texas, I would be the first to say it was an abuse of discretion, and reverse.
The question then arises, why didn't Southern Pacific move for a dismissal on the ground of forum non conveniens? They didn't. Instead, they claim the courts of this state have no authority whatever to hear this case. That simply is not the law.
The majority opinion tells us ominously:
[I]f we hold Southern Pacific amenable to suit here on the present claim, on grounds it is related to Southern Pacific's business done in interstate commerce, we might as well get ready to host the litigation on every FELA case Southern Pacific is ever called to defend, no matter how removed the plaintiff or the lex loci may be from Mississippi.
This simply is incorrect. It totally ignores the fact that the courts of this state have the authority to dismiss any case on the ground of forum non conveniens. This is the clear and simple remedy for any defendant who feels he is being sued in the wrong place.
If we follow the rationale of the majority opinion, Fox could not bring this suit in Mississippi against the defendant even though he had moved to Mississippi. Do we want this? If we follow this rationale, the same would hold true if this suit was against General Motors or IBM. Do we want this?
*367 I would hold that, by doing business in this state, Southern Pacific subjected itself to suit in the courts of this state, whether the cause of action accrued in Mississippi or Timbuktoo. This is clearly settled law.
For these reasons I respectfully dissent.
HAWKINS, P.J., and McRAE, J., join this opinion.
NOTES
[1] We have carefully compared the verbiage of Fox's original Texas complaint with his laterfiled Mississippi complaint. We note four differences. In paragraph I of the Texas complaint, he names the Southern Pacific Company as defendant and recites its registered agent and office in Houston, Texas, while in the Mississippi complaint he gives the name and address of the company's agent at its principal office in Lafayette, Louisiana. In paragraph II of each complaint, Fox describes the nature of Southern Pacific's interstate railroad business and asserts coverage under the FELA, the only distinction between the two complaints being that, in the Mississippi complaint, he adds the conclusory phrase that Southern Pacific "was doing business in the State of Mississippi." In paragraphs VI and VII of his Texas complaint, Fox alleges damages in general language, while the comparable paragraphs of his Mississippi complaint claim damages in specific dollar amounts, having in mind, no doubt, our rules of practice. See Rule 54(c), Miss.R.Civ.P. Fourth, in his Texas complaint Fox invokes a unique Texas rule on pre-judgment interest in personal injury cases. Beyond this, the two complaints are verbatim identical.
[2] No venue issues such as those present in Missouri Pacific Railroad Co. v. Tircuit, 554 So.2d 878 (Miss. 1989), have been preserved or tendered.
[3] In McDaniel v. Ritter, 556 So.2d 303, 307 n. 4 (Miss. 1989), we listed the four distinct predicates that "must be established" before a court "has authority to make an adjudication affecting the important rights of a non-resident." Today's issue is predicate (3), although the phrase "state statutory law" there mentioned is a bit too narrow. See, e.g., Jones v. Chandler, 592 So.2d 966, 971 (Miss. 1991); Chenier v. Chenier, 573 So.2d 699, 702 (Miss. 1990).
[4] Obviously a suit arising from a contract made here, or a tort committed here, has a nexus with this state.
[5] All of this has now changed. Effective July 1, 1991, the legislature amended Section 13-3-57 and repealed the nexus test. Miss. Laws ch. 573, § 98 (1991). The statute now reads:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure. [Emphasis supplied]
The amended statute applies prospectively to actions commenced after its effective date. Mladinich v. Kohn, 186 So.2d 481 (Miss. 1966). It has no effect on Fox's suit which he filed on July 12, 1988.
[6] Southern Pacific claims as well a non-resident plaintiff may not pursue "doing business" non-resident defendants under the statute's third prong. See, Smith v. DeWalt Products Corp., 743 F.2d 277, 279 (5th Cir.1984); Washington v. Norton Mfg. Inc., 588 F.2d 441, 444-45 (5th Cir.1979); Mills v. Dieco, Inc., 722 F. Supp. 296, 297 (N.D.Miss. 1989). In view of the disposition we make of the nexus/incident thereto issue, we need not address the point.
[7] See McDaniel's predicate (I). McDaniel, 556 So.2d at 307 n. 4.
[1] See, Shewbrooks v. A.C. & S., Inc., 529 So.2d 557, 565, wherein Justice Hawkins wrote: "The only restriction placed on states in hearing out-of-state claims is the Constitutional limit placed on our long-arm statute. So long as an out-of-state litigant has enough minimum contacts in Mississippi so that the maintenance of a suit "does not offend the traditional notions of fair play and substantial justice," our courts have the power to hear a suit. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Administrators of Tulane Educational Fund v. Cooley, 462 So.2d 696 (Miss. 1984). So long as the case falls within the prescribed period of when a suit can be brought, our courts must hear the action."