Charles H. Wilkinson and others have appealed from a decree of the chancery court of Marion County dismissing their complaint against the defendant Mercantile National Bank at Dallas, a banking corporation with principal offices in Dallas, Texas, because the court found it did not have jurisdiction. For this error, we reverse and remand for trial on the merits.
 FACTS
Mercantile National Bank at Dallas (MBank) is a national banking association organized under the laws of the United States of America, with its principal place of business in Dallas, Texas. MBank is not registered to do business in Mississippi. MBank has no offices, telephones or agents *Page 617 
in Mississippi, and owns no property in this state.
Charles Wilkinson and over 100 other appellants are, for the most part, residents of Mississippi, though residents of many other states are numbered among the appellants.[1] The appellants own interests in the gas and wells in the East Morgantown Field in Marion County, Mississippi. Appellants eventually sold gas to Tennessee Gas Pipeline Company. Tomlinson Interests, Inc., was a corporation organized under the laws of Texas and was owned, directly or indirectly, by Prentis B. Tomlinson, Jr., a resident of Houston, Texas. Tomlinson is qualified to do business in Mississippi. Tomlinson owned a working interest in gas wells in the East Morgantown Field.
MBank, leading a consortium of banks, loaned $108,000,000 to Tomlinson to finance Tomlinson's development and operation of the gas field in Mississippi. Tomlinson executed a deed of trust and security agreement to MBank covering Tomlinson's interest in certain wells as well as Tomlinson's production from these wells in the East Morgantown Field. Tomlinson granted to MBank a security interest in Tomlinson's share of the field and granted MBank the right to an assignment of Tomlinson's share of production from the field. The negotiation for and execution of the loan occurred in Texas. MBank alleged that it never exercised its right of assignment and never received any of the production from the East Morgantown Field.
Tomlinson and other owners of interests in the wells sold gas to Transcontinental Gas Pipeline Company. Transcontinental began purchasing gas from Tomlinson and others prior to the time that Tennessee Gas was able to hook up to the wells and begin purchasing gas from Wilkinson and the other appellants. Tomlinson sold a large quantity of gas prior to Wilkinson being able to sell any gas. Wilkinson and other plaintiffs (now appellants) filed suit against the interest owners who were selling gas to Transcontinental, alleging that pursuant to operating agreements and a Gas Balancing Agreement, defendants were classified as over-produced. Therefore, appellants were entitled to be brought into balance.
The suit, filed on August 2, 1984, sought a declaratory judgment against all defendants, including MBank, that Wilkinson and the other appellants were under-produced and entitled to all gas remaining in the ground until they were brought back into balance with the defendants. If the pool of gas became depleted before the appellants produced and sold enough gas to be brought back into balance, then the appellants sought a judgment requiring Transcontinental to pay back in-kind the amount of gas over-produced. In the event in-kind recovery could not be had, the appellants asked for a money judgment against all defendants (except MBank) to achieve cash balancing. Appellants alleged MBank received monies paid by Transcontinental to Tomlinson. Appellants requested that MBank be required to disgorge all monies attributable to over-production from the pool in order to provide a fund for any cash balancing. Appellants also prayed for a judgment against MBank in the amount of all money received from over-production of the pool in the event they were unable to recover their share of gas prior to the pool's depletion.
Appellants' amended complaint alleged that MBank had refused to recognize the appellants' interest in the over-produced gas and in monies received by MBank attributable to over-production, and accused MBank of wilfully converting to its own use and wrongfully appropriating money MBank knew did not belong to it or to the other defendants but which belonged to the plaintiffs.
MBank specially appeared and filed a motion to dismiss for lack of jurisdiction. The chancellor sustained its motion, dismissing MBank as a party defendant to the *Page 618 
suit. Wilkinson appeals, arguing that the Marion County Chancery Court possesses jurisdiction because MBank has entered a contract with a resident of Mississippi to be performed in whole or in part in this state, because MBank has committed a tort in whole or in part in this state against a Mississippi resident, because MBank is doing business in Mississippi, and because MBank's contacts with Mississippi are sufficient to meet the constitutional limitations placed on state power to subject non-residents to the in personam jurisdiction of its courts.
 LAW
A state court enjoys jurisdiction over a non-resident defendant to the extent permitted by the state's long-arm statute and the 14th amendment's due process clause. Brown v. FlowersIndustries, Inc., 688 F.2d 328 (5th Cir. 1982).
 I.
Whether the defendant is amenable to service under the long-arm statute is an issue controlled by state law.
The long-arm statute provides:
 Any non-resident person, . . . or any foreign . . . corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or non-resident, or who shall do any business or perform any character of work or service in this state, shall . . . be deemed to be doing business in Mississippi.
Miss. Code Ann. § 13-3-57 (Supp. 1987).
Miss. Code Ann. § 81-5-41 provides that a national banking association not organized under the laws of Mississippi and having no place of business within Mississippi, but which invests funds in Mississippi "may sue or be sued within this state in relation to such . . . deeds of trust on real properties, securities, or debts," and service of process may be had on an agent appointed within the state or upon the Secretary of State if no agent has been appointed; venue "shall be in the county of the residences of the plaintiffs . . . except where land is involved, in which case, venue shall be in the county in which the land . . . is located." Miss. Code Ann. § 81-5-41(5) (Supp. 1987). Section 81-4-41(5) may be viewed as a long-arm statute itself or as extending the doing business provision of §13-3-57 to include the activity described in § 81-5-41. The suit against MBank relates to its deeds of trust on real property and MBank has invested funds in Mississippi; therefore, MBank may be sued within this state in the present cause of action.
Riley v. Communications Consultants, Inc., 385 F. Supp. 296
(N.D.Miss. 1974), does not conflict with Miss. Code Ann. §81-5-41 because the loan in Riley was not secured and the wrongful death action did not arise out of the activity of making the loan.
Appellants alleged in their complaint that MBank committed the tort of conversion and assign as error the trial court's failure to base jurisdiction on the tort provision of the long-arm statute. For purposes of MBank's Motion to Dismiss, appellants' allegation of tort is assumed to be true. MBank argued that no part of the tort was committed "in this state" since all exchanges of money in which it was involved occurred in Texas. This argument rests on disappearing ground after Smith v.Temco, 252 So.2d 212 (Miss. 1971), which divided a tort into its four elements and held that if the damage occurs in this state, then the tort at least in part is committed in this state.Smith, 252 So.2d at 216. Since appellants alleged injury to their property interests in the East Morgantown Field, MBank must be treated, for purposes of jurisdiction, as having committed a tort in part in this state under the rule that a tortious act outside the state which causes injury within the state confers jurisdiction on the courts of that state.
 II.
Whether assertion of jurisdiction by the state court over a non-resident defendant *Page 619 
is consistent with due process is an issue controlled by federal law. Due process requires that the non-resident defendant have "certain minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice" and such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there." International Shoe Co.v. Washington, 326 U.S. 310, 316, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant's contacts with the forum state should be "such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen v. Woodson,444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). MBank's contacts with Mississippi were greater than the uncompensated, isolated contact in Mladinich v. Kohn, 250 Miss. 138,164 So.2d 785 (1964), were more substantial than the fortuitous contact inWorld-Wide Volkswagen, 444 U.S. at 295, 100 S.Ct. at 566, and were of a more substantial and continuing nature than the purchases in Helicopteros Nacionales de Colombia, S.A. v. Hall,466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). MBank's contact was sustained and deliberate like that present in BurgerKing Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), and Keeton v. Hustler Magazine,Inc., 465 U.S. 770, 773, 104 S.Ct. 1473, 1477, 79 L.Ed.2d 790 (1984). As to the anticipation of being haled into court, we held in Anderson v. Sonat Exploration Co., 523 So.2d 1024, 1027 (Miss. 1988), that one executing legal documents in a certain state "should certainly not be surprised that any litigation arising from it should be filed in that state."
It has also been said that "[t]he substantial connection . . . necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state." Asahi Metal Industry Co. v. Superior Court,480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92, 104 (1987). The defendant must be shown to have taken action "to purposefully avail itself of the . . . market" of the forum state, Asahi,
480 U.S. at 112, 107 S.Ct. at 1033, 94 L.Ed.2d at 105, or to have "purposefully . . . invoke[d] the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). MBank's financing of Tomlinson's venture in Mississippi was an action purposefully directed toward Mississippi. By protecting itself against default by Tomlinson by perfecting its security interest in Tomlinson's assets in Mississippi through filing financing statements and deeds of trust, MBank purposefully availed itself of the protection of Mississippi law.
It is significant that Tomlinson's venture was land-related and that some of MBank's interests as creditor were secured by real property and the gas lying under it. Asahi Metal Industry held that California could not exert in personam jurisdiction over a Japanese manufacturer of valves sold and installed in tire tubes which were sold in California because the Japanese company's action was not purposefully directed toward the forum state.Asahi, 480 U.S. at 111, 107 S.Ct. at 1032, 94 L.Ed.2d at 104. Financing Tomlinson's development and operation of gas wells in Mississippi was more purposefully directed toward the forum state than the defendant's action in Asahi. MBank's action of taking a security interest in property with a permanent situs in Mississippi had more direction and focus than the placement of products in the stream of commerce, and MBank's security interest in real property created a situation where MBank's amenability to suit did not travel with its debtor, as it would if we were to reach our holding today based on security interests in mobile and personal property.
The case most closely analogous to the relationship between MBank and the appellants is Marathon Metallic Building Co. v.Mountain Empire Construction Co., 653 F.2d 921 (5th Cir. 1981). A Colorado resident guaranteed payment of his Colorado corporation's contractual obligations to the plaintiff, a Texas corporation. The Colorado corporation purchased merchandise on credit from the plaintiff, and when the Colorado corporation defaulted, the plaintiff *Page 620 
looked to the guarantor. The Fifth Circuit held that maintenance of the suit in Texas did not violate the guarantor's due process rights because the effect of the guarantee was to involve the guarantor in each advance of credit "and purposefully to cause business activity, foreseeable by [the guarantor], in the forum state." Marathon Metallic, 653 F.2d at 923. Likewise, the effect of MBank financing Tomlinson was to purposefully cause business activity, foreseeable by MBank, in this the forum state. The only difference between a loan and a guarantee is that the guarantee is an anticipatory loan making a present loan unnecessary. To be more accurate, a guarantee induces suppliers to make a loan to the new entrepreneur by selling to him on credit so that the entrepreneur may avoid borrowing to pay cash for purchases.[2] We adopt the rule developed by the Fifth Circuit: "When a non-resident defendant takes `purposeful and affirmative action,' the effect of which is `to cause business activity, foreseeable by [the defendant], in the forum state,' such action by the defendant is considered a `minimum contact' for jurisdictional purposes." Mississippi Interstate Express,Inc. v. Transpo, Inc., 681 F.2d 1003, 1007 (5th Cir. 1982) [Brackets original]. This rule obviously applies here where MBank, as agent for a group of banks, consummated a $108,000,000 loan to Tomlinson for the purpose of developing and operating the East Morgantown Field in Marion County, Mississippi, then filed deeds of trust and security agreements on all of Tomlinson's interests in East Morgantown Field, perfecting its security interests pursuant to Mississippi law.
Miss. Code Ann. § 81-5-41(5) brings national banking associations in MBank's position within the reach of the doing business provision of the long-arm statute. MBank's contacts with this state are sufficient to meet the constitutional limitations placed on Mississippi's power to subject non-residents to the inpersonam jurisdiction of its courts. Clearly, the chancery court has the authority to hear this cause and render an enforcible decree or judgment. The chancellor erred in dismissing MBank.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT HEREWITH.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., not participating.
[1] There is no problem with application of Mississippi law to every plaintiff's claim as there was in Phillips Petroleum Co.v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), because the only rights to be adjudicated by the Mississippi court are rights to Mississippi land and gas.
[2] If this is Law Economics, then so be it. We think it is simply logic (borne out by experience).