655 So.2d 873 (1995)
David B. GROSS
v.
CHEVROLET COUNTRY, INC.
No. 92-CA-00041-SCT.
Supreme Court of Mississippi.
April 27, 1995.
Rehearing Denied June 22, 1995.
*875 Paul M. Neville, Neville & Wilson, Jackson, for appellant.
Charles G. Copeland and Michael W. Baxter, Copeland Cook Taylor & Bush, Jackson, for appellee.
En banc.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
David Gross ("Gross"), a Mississippi resident, filed suit against Chevrolet Country, Inc. ("Chevy"), a Texas corporation, alleging Chevy was subject to in personam jurisdiction of the Mississippi courts pursuant to our long arm statute. Gross alleged Chevy was doing business in this State and further alleged Chevy had committed a tort in part within this state. Chevy moved for summary judgment, claiming the trial court lacked in personam jurisdiction; summary judgment was granted in favor of Chevrolet. Gross now appeals from the trial court's grant of summary judgment, seeking review of the following issues:
A. Whether the trial court erred in granting summary judgment in favor of Chevrolet Country, Inc., on the basis that the court lacked in personam jurisdiction over Chevrolet because it was not doing business within the state; and
B. Whether the trial court erred in finding no ground for the exercise of in personam jurisdiction over Chevrolet Country, Inc., in view of Gross' allegation that Chevrolet had committed a tort at least partially within the state.
The trial court did not err in granting summary judgment in favor of Chevy; therefore, this Court affirms.

II. THE FACTS AND PROCEDURAL HISTORY
Gross purchased a new 1983 General Motors Corporation (GMC) van from Martin Motor Company in Laurel, Mississippi. While traveling through Austin, Texas, on August 31, 1985, Gross' van became disabled and it was towed to Chevy, the nearest GM dealer in the area, on September 1, 1985. Chevy performed the necessary repairs, Gross paid for the services, and Gross regained possession of his van on September 4, 1985. On January 27, 1986, Gross' van would not start. The following day it was towed to Fowler Buick-GMC (Fowler) for repairs, the cost of which was $4,723.85. Fowler employees informed Gross that the repairs to the van were necessitated by damage caused by a nut that had been left in the air intake system during previous repairs. Fowler employees also told Gross that previous work they had performed on the van had not required access to the air intake system; therefore, the nut could not have been left there by Fowler. However, previous work by Fowler had required removal of the engine cover.
*876 On August 31, 1987, David Gross filed suit in the Hinds County Circuit Court against Chevrolet Country, Inc., GMC, and Fowler-Buick. Gross, a resident citizen of Mississippi, alleged that Chevy was a Texas corporation which had either done business in Mississippi or committed a tort within Mississippi. Gross alleged that only Chevy and Fowler had removed the engine cover with access to the air intake system. Gross claimed he had relied upon Chevy's and Fowler's service departments because of GMC's "Mr. Goodwrench" advertising programs. Gross further alleged a tortious breach of duty and negligence on the part of either Chevy or Fowler in repairing the van, alleged tortious conduct on the part of GMC because of its advertising campaign, and sought $54,873.00 compensatory and $10,000,000.00 punitive damages.
Chevy responded with a motion to dismiss for lack of in personam jurisdiction and an answer to Gross' complaint. Chevy's motion to dismiss was amended to show that it was not subject to in personam jurisdiction in Mississippi via this state's long arm statute. Gross sought to have Chevy's motion to dismiss held in abeyance until completion of discovery; Chevy's motion to dismiss was subsequently overruled. GMC filed a motion to dismiss, which was granted except as to the count alleging breach of express warranty.
Gross next amended his complaint to allege that Fowler employees told Gross the nut could have been left in the air intake system upon manufacture. Gross also dropped the intentional misconduct count contained in the original complaint. The punitive damages requested were reduced to $1,000,000.00. Again, Chevy answered and included a motion to dismiss for lack of in personam jurisdiction. GMC again moved for summary judgment, which was granted except as to the express warranty claim. The court reserved ruling on Gross' claim that a separate express warranty claim lay in the "Mr. Goodwrench" advertising campaign. Gross then filed a motion to reconsider the order of dismissal and order of partial summary judgment. The cause was subsequently dismissed because stale, then reinstated.
Gross requested leave to file a second amended complaint. Chevy then filed a motion for summary judgment, noting that Gross' claims against it arose from repairs to Gross' van performed by Chevy within the state of Texas on one occasion and claiming that the Mississippi long arm statute did not confer jurisdiction over Chevy. In the alternative, Chevy requested summary judgment because there were no genuine issues of material fact. Chevy claimed that adequate time for discovery had passed and Gross had not and could not provide any evidence that Chevy had left the extraneous nut in the air intake system of the van. Chevy further noted that the van performed well for nine thousand (9,000) miles after Chevy had performed repairs to the van.
The judge who issued the order on Gross' motions for leave to file an amended complaint, to reconsider the previous order of dismissal and partial summary judgment with respect to GMC, and Chevy's motion for summary judgment, noted that the previous orders of the court had been entered by a different judge. In his order, the new trial judge found that a previous order had reserved the question of all theories of recovery based on the "Mr. Goodwrench" advertising campaign. The court further found that Chevy was not subject to the Mississippi court's jurisdiction based on any alleged tortious actions in Texas. However, the court found that the question of whether Chevy was subject to jurisdiction because vicariously liable for any alleged negligence of Fowler as a co-venturer in the "Mr. Goodwrench" advertising campaign or because it was doing business in the state as such a co-venturer, remained.
The trial court granted Gross' request to file a second amended complaint, more explicit than the first amendment regarding the "Mr. Goodwrench" campaign, and Chevy's motion for summary judgment was held in abeyance pending further discovery on the "Mr. Goodwrench" advertising issue.
Gross filed his second amended complaint, to which Chevy responded that it was not subject to the court's jurisdiction. Chevy then moved to renew its prior motion for summary judgment. Gross opposed Chevy's *877 motion for summary judgment, claiming that there were material issues of fact precluding such relief. Gross also submitted affidavits supporting his opposition of summary judgment; Chevy moved to strike both affidavits submitted by Gross.
The trial court granted Chevy's motion for summary judgment, finding as a matter of law that Fowler was not acting on behalf of Chevy when Fowler repaired Gross' van. The court also found that Chevy had no right to control the manner in which the repairs were performed by Fowler. The court concluded that with no imputed negligence from Fowler to Chevy, no grounds for in personam jurisdiction over Chevy remained. Gross' motion for a new trial or to alter judgment was denied.
GMC made an offer of judgment to Gross in the amount of $5,000.00, which was accepted. A summary judgment in favor of Chevy was subsequently entered by the court. This appeal followed.

III. THE LAW
A. Whether the trial court erred in granting summary judgment in favor of Chevrolet Country, Inc.:
1. on the basis that the court lacked in personam jurisdiction over Chevrolet because it was not doing business within the state; or
2. in view of Gross' allegation that Chevrolet had committed a tort at least partially within the state.

a. Summary Judgment
Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the Rule. Frank v. Dore, 635 So.2d 1369, 1373 (Miss. 1994); Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991).
This Court will review de novo a decision to grant summary judgment. Nationwide Mut. Ins. Co. v. Garriga, 636 So.2d 658, 660 (Miss. 1994); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss. 1988). If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). This Court, however, views the evidence in the light most favorable to the non-moving party. Turner v. Johnson, 498 So.2d 389, 390 (Miss. 1986).

b. Mississippi Long Arm Statute
Gross contends Chevy is amenable to suit in Mississippi via our long arm statute, Miss. Code Ann. § 13-3-57 (Supp. 1994). This statute allows exercise of personal jurisdiction over a nonresident corporation if it made a contract with a Mississippi resident to be performed in whole or in part in this state, committed a tort in whole or in part in this state against a resident or nonresident, or conducted any business or performed any character of work or service in Mississippi. Via any of these acts, a nonresident corporation is deemed to be doing business in Mississippi. Miss. Code Ann. § 13-3-57 (Supp. 1994).

1) "Doing Business"
Chevy did not make any contract with a Mississippi resident which was to be performed in any part within Mississippi, nor does Gross make such a claim. Whether Chevy committed a tort in part in this state against Gross is discussed subsequently herein. But did Chevy conduct any business in Mississippi? The test to determine whether a nonresident corporation is doing business in Mississippi, as contemplated by our long arm statute, is: (1) the nonresident corporation must purposefully do some act or consummate a transaction in Mississippi; (2) the cause of action must either arise from or be connected with the act or transaction; and (3) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice. Rittenhouse v. Mabry, 832 F.2d 1380, 1384 (5th Cir.1987) (citing Mladinich v. Kohn, 250 Miss. 138, 147, 164 So.2d 785, 790 (1964)). The third prong of this test must be considered *878 in light of the amount and type of activity in Mississippi, convenience of the parties, whether the parties receive benefits and protections of Mississippi's laws, and the equities of the situation. Rittenhouse, 832 F.2d at 1384.
While the current long arm statute, which became effective July 1, 1991, does not require any nexus between the nonresident's Mississippi business and the injury, the version of the long arm statute in effect at the time Gross filed his complaint and amended complaints did require such a nexus. See Southern Pacific Transp. Co. v. Fox, 609 So.2d 357, 360, 360 n. 5 (Miss. 1992). The prior long arm statute, at issue here, allowed assumption of jurisdiction only in actions accruing from or incident to the nonresident's actions in Mississippi. Southern Pacific, 609 So.2d at 360; Miss. Code Ann. § 13-3-57 (Supp. 1990) (effective from and after July 1, 1980). The current version of the long arm, which repealed the nexus test, applies only prospectively to causes of action commenced after July 1, 1991. Southern Pacific, 609 So.2d at 360 n. 5. It follows that the nexus test of the prior statute and the Mladinich test for "doing business" are applicable to the case sub judice.
The record does not reflect that Chevy purposefully performed any act or consummated any business in Mississippi. Gross argues that by virtue of Chevy's participation in the "Mr. Goodwrench" program Chevy is a joint venturer with Fowler, also a participant in the "Mr. Goodwrench" campaign. However, neither Chevy nor Fowler has any right of mutual control, they do not share profits or losses, and neither had any actual intent to form a joint venture. Without these essential elements, there can be no joint venture. Hults v. Tillman, 480 So.2d 1134, 1142-43 (Miss. 1985) (citing Sample v. Romine, 193 Miss. 706, 8 So.2d 257, modified, 193 Miss. 706, 10 So.2d 346 (1942)).
Assuming, arguendo, Chevy is a joint venturer in the "Mr. Goodwrench" advertising campaign, there is still no purposeful solicitation from Chevy of Mississippi residents to come to Chevy, in Texas, for automobile repairs. Cf. Creech v. Roberts, 908 F.2d 75, 79 (6th Cir.1990), cert. denied, 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991) (advertisement of particular foreign entity in forum state constitutes purposeful availment of the privilege of acting in forum state). The advertising of "Mr. Goodwrench" in Mississippi is presumably intended to induce Mississippi residents to deal with Mr. Goodwrench dealers and servicers in Mississippi. Even if a joint venture existed, the first prong of the Mladinich tripartite test for "doing business" is not met. With no purposeful act or transaction in Mississippi, the second prong of the Mladinich test  a nexus between the cause of action and the purposeful Mississippi act or transaction  cannot be met.
Continuing with the third prong of the Mladinich test, traditional notions of fair play and substantial justice would be offended by assumption of jurisdiction in this case. Chevy has never advertised in the state of Mississippi nor has it carried on any activity within this state. Mississippi is a convenient forum for Gross, but not so for Chevy. Further, Chevy has not availed itself of the benefits or protections of Mississippi's laws. As a matter of law, assertion of jurisdiction over Chevy based on its "doing business" in Mississippi would be improper. The trial court did not err.

2) Corporate Long Arm Statute
Miss. Code Ann. § 79-1-27, a statute regulating corporations, has been interpreted by this Court as supplemental to the long arm statute. Arrow Food Distributors, Inc. v. Love, 361 So.2d 324, 327 (Miss. 1978), cert. denied, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979), overruled on other grounds, Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985). Although repeal of this section was effective January 1, 1988, it was in force at the time Gross commenced his action in 1987. This statute subjected foreign corporations to jurisdiction of Mississippi courts, whether or not the cause of action accrued in Mississippi, if the corporation was doing business in Mississippi. Rittenhouse, 832 F.2d at 1387. Section 79-1-27 required no nexus between the injury and the corporation's business activity in *879 Mississippi. Nonetheless, this statute aids Gross not at all because he has not shown that Chevy was doing business in Mississippi.

3) Tort Within the State
The Mississippi long arm statute subjects a nonresident corporation to jurisdiction of this state's courts if it committed a tort, in whole or in part, within this state. Miss. Code Ann. § 13-3-57 (Supp. 1994). Gross alleged that Chevy committed a tort in part within this state, either by negligently leaving the extraneous nut in the air intake system at the time it performed repairs or, vicariously, by virtue of the "Mr. Goodwrench" joint venture, through Fowler negligently leaving the extraneous nut in the air intake system. As previously discussed, the record does not evidence a joint venture between Chevy and Fowler. Consequently, any jurisdiction over Chevy based on the tort prong of our long arm must be supported by a tort committed by Chevy, in whole or in part, in Mississippi.
Assuming Chevy negligently left the nut in the air intake system when it made repairs to Gross' van, no injury occurred until five months later when the van's engine froze and Gross sustained a financial loss related to engine repairs performed by Fowler. For purposes of the tort prong of Mississippi's long arm statute, "a tortious act outside the state which causes injury within the state confers jurisdiction on the courts of that state." Wilkinson v. Mercantile Nat. Bank, 529 So.2d 616, 618 (Miss. 1988). But, as noted above, assertion of jurisdiction over Chevy would still offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
Chevy has no contacts with Mississippi which would cause reasonable anticipation that it would be "haled into court" here. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Not only are there no substantial, continuous, and deliberate contacts with Mississippi, there is no purposeful availment of the Mississippi market and no invocation of the benefits or protections of Mississippi laws. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In sum, Chevy does not have the requisite minimum contacts with Mississippi such that it would be reasonable to require Chevy to defend a suit here. International Shoe, 326 U.S. at 317, 66 S.Ct. at 158. There are no genuine issues of material fact necessary to this determination; the trial court did not err.

IV. CONCLUSION
To allow assertion of in personam jurisdiction by our courts in this instance would likely prompt reciprocal action by other states toward Mississippi citizens. Certainly traditional notions of fair play and substantial justice would be offended by assertion of in personam jurisdiction by a Texas court over a Mississippi automobile mechanic simply because a vehicle on which he had performed repairs in Mississippi subsequently, and perhaps only coincidentally, became disabled in Texas.
It can be said as a matter of law that Chevy is not amenable to jurisdiction in Mississippi pursuant to our long arm statute. There was no purposeful solicitation of Mississippi residents to come to Chevy, in Texas, for automobile repairs, therefore Chevy was not "doing business" in Mississippi. Rittenhouse v. Mabry, 832 F.2d 1380, 1384 (5th Cir.1987); Mladinich v. Kohn, 250 Miss. 138, 148, 164 So.2d 785, 790 (1964). Despite the "Mr. Goodwrench" advertisements, there was no joint venture between Chevy and Fowler on which to base a finding that Chevy was "doing business" in Mississippi. Hults v. Tillman, 480 So.2d 1134, 1142-43 (Miss. 1985); Sample v. Romine, 193 Miss. 706, 8 So.2d 257, modified, 193 Miss. 706, 10 So.2d 346 (1942). Assuming, arguendo, Chevy was "doing business" in this state, traditional notions of fair play and substantial justice would be offended by requiring Chevy to defend a suit in Mississippi due to the lack of purposeful, continuous, and systematic contacts with the state and Chevy's failure to invoke the benefits and protections of Mississippi *880 laws. International Shoe Co. v. Washington, 326 U.S. 310, 316-17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The corporate long arm statute also fails to make Chevy subject to suit in Mississippi because Gross did not show that Chevy was doing business in Mississippi. Rittenhouse, 832 F.2d at 1387.
Although Gross alleged that Chevy committed a tort within this state, Chevy's lack of contacts with Mississippi again prevent assertion of jurisdiction. Chevy did not have the requisite minimum contacts which would cause reasonable anticipation that it would be haled into court here. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). There are no genuine issues of material fact necessary to this determination; therefore, this Court affirms.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and JAMES L. ROBERTS, J.
BANKS, J., not participating.
McRAE, Justice, dissenting:
In view of the majority's decision, any Mississippi resident who suffers an injury in Mississippi as the result of negligent repairs made to his automobile or other personal property in another state cannot seek redress in his home state, but instead, must bring suit in the jurisdiction where the repairs were made. I disagree with that proposition and therefore, dissent.
Repairs were made to Gross's GMC van at Chevrolet Country, Inc. in Austin, Texas, in September, 1985. Five months later, at home in Mississippi, the van refused to start and was towed to Fowler Buick-GMC in Jackson, where it was determined that the vehicle's problems arose from a nut left in the air intake system left during a previous repair job, allegedly by Chevrolet Country. It cost Gross some $4,723.85 to have the damage repaired. Gross filed suit against GMC, Chevrolet Country and Fowler Buick on August 31, 1987.
When a manufacturer places a defective product into the stream of commerce and damages result, we look to where the plaintiff's injury occurred. Since our decision in State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966), where a home in Mississippi was demolished by the explosion of a water heater that had been manufactured in Tennessee and sold to a wholesaler in Memphis before being sold to a Mississippi contractor and suit was filed in Mississippi against the Tennessee manufacturer, where the plaintiff might bring suit has not been an issue in these cases. Suit may be brought where the tort happened in full or in part, regardless of how attenuated the defendant's relationship to the situs of the injury. Similarly, when damages arise from negligent repairs, suit is properly brought where the injury occurred. Especially in cases where multiple defendants are involved, it therefore defies logic to suggest that a separate suit should be filed in Texas against Chevrolet Country when the injury complained of occurred in Mississippi, the plaintiff and defendant Fowler Buick are Mississippi residents and GMC, by virtue of doing business in Mississippi, is unquestionably subject to our long-arm jurisdiction.
In Southern Pacific Transportation Co. v. Fox, 609 So.2d 357 (Miss. 1992), where this Court found that the Mississippi courts did not have jurisdiction to hear a FELA case arising out of a tort which occurred in Texas brought by a Texas plaintiff against a railroad with Mississippi business relationships, the majority was reminded that under common law, such a claim could have been permissible. Id. at 363-364 (Dan Lee, P.J., dissenting). The dissent focused on the language of Pullman Palace-Car Co. v. Lawrence, 74 Miss. 782, 22 So. 53 (1897), which provides as follows:
(W)e had supposed there was, in our own state, no ground left for dispute that, in *881 transitory actions, whether in tort or in contract, our courts were wide open to any suitor, resident or nonresident, against his adversary, whether resident or nonresident, whether a natural person or an artificial one, regardless of where the right of action occurred, if only the courts had jurisdiction of the subject matter, and could obtain jurisdiction of the party, either a voluntary appearance, or by service of process.
Pullman, 74 Miss. at 796, 22 So. 53 (emphasis added). Regardless of amendments to and repeal of language in our long-arm statutes, our courts have been open to cases against non-resident defendants. We have not closed our doors to suits against non-resident manufacturers with only fortuitous links to Mississippi. Therefore, our courts should be open to actions against non-resident businesses when a tort in whole or part occurs in Mississippi and causes damages to a Mississippi resident. Accordingly, I dissent.
DAN M. LEE, P.J., and JAMES L. ROBERTS, J., join this opinion.